(942 P.2d 49)
No. 75,751

STATE OF KANSAS, *Appellee*, v. STACY LAVELL FISHER, *Appellant*.

Opinion filed July 11, 1997.

*Michael J. Helvey*, assistant appellate defender, and *Steven R. Zinn*, deputy appellate defender, for appellant.

*Scott C. Rask*, assistant county attorney, and *Carla J. Stovall*, attorney general, for appellee.

Before KNUDSON, P.J., MARQUARDT, J., and WAHL, S.J.

WAHL, J.: Stacy Lavell Fisher appeals his convictions for possession of cocaine, possession of marijuana, possession of drug paraphernalia, no tax stamp, five counts of forgery, and obstruction of official duty.

On May 4, 1995, Detective Tim Holsinger of the Labette County Sheriff's Office requested that the district court issue a warrant to search an apartment at 1544 South 25th Street, #4, in Parsons. Detective Holsinger stated in an affidavit that a confidential informant had told Detective Steenrod of the Parsons Police Department that Fisher and his girlfriend, Lisa Poole, lived at that address and that Fisher was selling crack cocaine. The affidavit stated that the manager of the apartment complex confirmed that Lisa Poole lived at that address and that Fisher stayed with her.

The affidavit stated that on May 2, 1995, the confidential informant told Detective Steenrod that Fisher was about to obtain crack cocaine for sale. Later that day, the confidential informant told Detective Holsinger that Fisher had obtained the crack cocaine. The confidential informant said that Fisher himself had told the informant that Fisher had crack cocaine available for sale on May 3, 1995. The affidavit so stated:

"This confidential informant has provided information regarding a lot of drug activity and numerous people involved with the use or sale of drugs that has been verified and found to be reliable and true. The people mentioned by the confidential informant are known by Labette County law enforcement officers to be involved with the use or sale of drugs from other informants or past drug history."

The affidavit stated that the confidential informant said Fisher was recently graduated from the Labette Correctional Conservation Camp in Oswego and had been in trouble for selling cocaine in the past. The affidavit further stated that a computer check of Fisher's criminal record confirmed that Fisher had a prior conviction for possession of cocaine with intent to sell and that personnel at the Labette Correctional Conservation Camp confirmed that Fisher had recently completed time at the camp.

The affidavit stated that the correctional camp's records described Fisher as a 5' 7", 170-lb. black male born on April 19, 1973.

Based on this information, Detective Holsinger requested a warrant to search both the apartment of Fisher and Poole and Fisher's person for drugs and paraphernalia. A district judge issued the warrant as requested.

About 6:30 p.m. that evening, Detective Holsinger and two other deputy sheriffs executed the warrant. Holsinger knocked and when Fisher came to the door, Holsinger identified himself as a police officer and ordered Fisher to put his hands on his head. Fisher was holding what appeared to be a considerable amount of cash in his hands and he did not put his hands on his head. Holsinger drew his service revolver and repeatedly demanded that Fisher put his hands on his head while Fisher backed through the apartment into a bedroom and finally complied by putting his hands on his head.

Another man, Johnny Woodson, was in the bedroom. The officers handcuffed and searched both Fisher and Woodson and found a baggie of marijuana and rolling papers on Fisher. The officers asked the two men for their names, and Fisher identified himself as Terry Johnson.

The officers searched the residence and found a rock of crack cocaine behind the television in the bedroom where the two men were handcuffed. They found another 30 rocks of individually packaged crack cocaine in the closet of the bedroom, a razor blade with cocaine residue in a hallway closet, a small amount of marijuana in a trash can in the kitchen, and rolling papers on top of the refrigerator. The officers arrested Fisher and Woodson. Based largely on the evidence seized from the apartment, the State charged Fisher with possession of cocaine with intent to sell, conspiracy to sell cocaine, possession of marijuana, possession of drug paraphernalia, and no tax stamp. For giving police a false name at the apartment, the State charged Fisher with obstruction of official duty.

At the jail, Fisher signed three fingerprint documents and one palmprint document as T. L. Johnson. He signed the palmprint documents under the assumed name twice. The State charged Fisher with five counts of forgery for using a false name in the five signatures on the fingerprint and palmprint documents.

Fisher moved the district court to suppress the evidence of the drugs seized from the apartment, claiming that the affidavit in support of the request for the search warrant did not provide probable cause to issue the warrant. The district court denied the motion.

Fisher also moved the district court to require the State to reveal the identity of the confidential informant. Fisher claimed that discovering the informant's motive would be essential to Fisher's receiving a fair trial. Defense counsel hypothesized that the informant might be someone who wanted to harm Fisher or that the informant might have evidence that the drugs in the apartment belonged to someone other than Fisher. More specifically, defense counsel said that if Woodson were the confidential informant, Fisher could attack Woodson's credibility because he had made a deal with the State in exchange for testifying against Fisher. The State responded that at trial, Fisher could examine Woodson, Poole, or any other witness Fisher thought could present evidence relevant to the issue of who possessed the drugs without the State's revealing the identity of the confidential informant. The district court agreed with the State and denied Fisher's motion.

At the close of evidence at trial, Fisher moved to dismiss the five forgery counts, claiming the State had failed to prove intent to defraud. Fisher pointed out that the crime of forgery requires an "intent to defraud" which means an intent to deceive "with reference to property" under the Kansas criminal code. Fisher argued that his signatures on the fingerprint and palmprint documents did not affect anyone's interest in property. The district court found that the government had a property interest in maintaining its records and denied the motion.

The jury could not reach a verdict on the conspiracy to sell cocaine charge. The jury found Fisher guilty of possession of cocaine as a lesser included offense of possession of cocaine with intent to sell. The jury also found Fisher guilty of possession of marijuana, possession of drug paraphernalia, no tax stamp, five counts of forgery, and obstruction of official duty.

The district court sentenced Fisher to 18 months for the possession of cocaine conviction, 5 months for the obstruction of official duty conviction, and 5 months for the no tax stamp conviction,

and ordered each of those sentences to run consecutively. The trial court sentenced Fisher to 8 months for each of the forgery convictions and ordered those sentences to run concurrent with each other but consecutive to the other sentences. The court imposed two concurrent 1-year sentences, respectively, for the possession of marijuana and possession of paraphernalia convictions and ordered those sentences to run concurrent with the other sentences. Fisher's controlling sentence was 36 months. Fisher appeals.

Fisher argues that the government's interest in recording the fingerprints of arrestees is not a sufficient property interest to serve as the basis for a forgery conviction under the Kansas Criminal Code. This is an issue of statutory interpretation, and this court's review is unlimited. *Foulk v. Colonial Terrace*, 20 Kan. App. 2d 277, Syl. ¶ 1, 887 P.2d 140 (1994), *rev. denied* 257 Kan. 1091 (1995).

K.S.A. 21-3710(a)(1) provides in pertinent part, that forgery is knowingly and "with intent to defraud" endorsing a written instrument so that it purports to have been endorsed by another person, either fictitious or real, without that person's authority. K.S.A. 21-3110(9) defines intent to defraud in the context of the Kansas criminal code as "an intention to deceive another person, and to induce such other person, in reliance upon such deception, to assume, create, transfer, alter or terminate a right, obligation or power *with reference to property*." (Emphasis added.) "Property" is defined as "anything of value, tangible or intangible, real or personal." K.S.A. 21-3110(16). "Personal property" is defined as "goods, chattels, effects, evidences of rights in action and all written instruments by which any pecuniary obligation, or any right or title to property, real or personal, shall be created, acknowledged, assigned, transferred, increased, defeated, discharged, or dismissed." K.S.A. 21-3110(15).

The State points out that K.S.A. 21-2501(d) states that the purpose of fingerprinting arrestees is to identify the arrestee and to allow law enforcement agencies to maintain records of those arrestees. The State contends that the government has an interest in such records, and once such records are compiled, they are a valuable source of information.

The fact that the government has *an* interest in obtaining fingerprint records of arrestees does not establish that the government has a *property* interest, as distinguished from an administrative interest, in obtaining accurate fingerprint records of arrestees.

In *State v. Rios*, 246 Kan. 517, 530, 792 P.2d 1065 (1990), the court construed and applied the definition of "intent to defraud" in K.S.A. 21-3110(9). In *Rios*, two managers at two Dillards department stores in Wichita were convicted of making false writings under K.S.A. 21-3711 for taking money from the stores' tills and attempting to cover up the thefts by signing fictitious customer refund vouchers. The *Rios* court vacated the managers' convictions for making false writings. The court held that the managers did not falsify the vouchers with the "intent to defraud" because the managers had already deprived Dillards of its property—the money from the cash registers—before falsifying the vouchers. 246 Kan. at 530.

Here, the State asks this court to define "property" so broadly as to be inconsistent with the essential holding in *Rios*. In *Rios*, if the customer refund records had amounted to a property interest, the court would have affirmed the convictions, despite the lack of an intent to defraud regarding the money in the cash registers. "Penal statutes must be strictly construed in favor of the persons sought to be subject to them." *State v. Schlein*, 253 Kan. 205, 209, 854 P.2d 296 (1993). Although fingerprint/palmprint records, once obtained, are a valuable law enforcement tool, such records, like the customer refund vouchers in *Rios*, do not have the sort of intrinsic value necessary to fall within the definition of "property" in K.S.A. 21-3110(15) for purposes of crimes in Kansas.

We need not speculate as to which statutes the State could have relied on to charge Fisher for having signed a false name to the fingerprint/palmprint cards. Fisher's actions, however, did not satisfy the statutory elements of forgery, and his conviction on the five forgery counts must be reversed.

Fisher accurately cites to the rule that the constitutional prohibition against double jeopardy prohibits the State from retrying him for falsifying his signature on the fingerprint/palmprint cards.

See *State v. Freeman*, 236 Kan. 274, Syl. ¶¶ 6, 7, 689 P.2d 885 (1984).

Fisher then argues that the district court abused its discretion in denying his motion to require the State to reveal the identity of the confidential informant referred to in the affidavit supporting the request for the search warrant. We review a trial court's ruling on a motion to require the State to reveal the identity of a confidential informant under an abuse of discretion standard. See *State v. Lumbrera*, 257 Kan. 144, 148, 891 P.2d 1096 (1995).

The identity of a confidential informant is privileged unless the informant's identity has already been disclosed or disclosure "is essential to assure a fair determination of the issues." K.S.A. 60-436(a)-(b). In *State v. Deffenbaugh*, 216 Kan. 593, 600, 533 P.2d 1328 (1975), the court explained: "When the issue is probable cause for search, and not guilt or innocence of the defendant, the State generally is not required to disclose the identity of an informant." In deciding whether to require the disclosure of the identity of a confidential informant, a court must balance the public interest in protecting the flow of information to law enforcement officials against the defendant's right to prepare his or her defense. See *State v. Minor*, 229 Kan. 86, 88, 622 P.2d 998 (1981) (citing *Roviaro v. United States*, 353 U.S. 53, 62, 1 L. Ed. 2d 639, 77 S. Ct. 623 [1957]).

Fisher points out that both Poole and Woodson had access to the apartment where the drugs were found, and that both Poole and Woodson entered plea agreements with the State in exchange for testifying against Fisher. He claims that the district court's refusal to reveal the identity of the informant interfered with his ability to present a defense that either Poole or Woodson, not Fisher, possessed the drugs. Fisher also notes that, at trial, it was revealed that his relationship with Poole was tumultuous. Poole suspected Fisher of cheating on her. Fisher contends that Poole might have set him up for a drug bust out of jealousy over another woman.

The defendant has the burden to demonstrate that disclosure of the confidential informant's identity is material to his or her defense. *State v. Cohen*, 229 Kan. 65, 69, 622 P.2d 1002 (1981).

Fisher must demonstrate that he was unable to prepare his defense that he did not knowingly possess the drugs in the apartment due to the district court's refusal to reveal the identity of the confidential informant.

"Speculation and suspicion regarding what an informant might possibly testify to is not sufficient to require disclosure." *State v. Thomas*, 252 Kan. 564, 581, 847 P.2d 1219 (1993). Even if Poole or Woodson were the confidential informant or provided the informant with information, all of which is mere speculation, Fisher fails to show how the district court's denial of his motion to reveal the informant's identity prevented his pursuing his defense. Fisher did not need to know the identity of the confidential informant in order to pursue such a defense. The State called both Poole and Woodson to testify at trial, and Fisher was free to cross-examine them and to recall them as defense witnesses to ask them any questions relevant to the possession issue. The district court's refusal to require the State to reveal the identity of the confidential informant did not affect Fisher's ability to present a defense on the possession issue.

If a confidential informant is a "mere tipster" rather than an active participant or a direct observer of the criminal activity, disclosure of the informant's identity is not necessary for a fair trial. *Thomas*, 252 Kan. at 580-81. If the informant were either Poole or Woodson, Fisher was able to pursue his defense without disclosure of the informant's identity. Fisher has failed to show that any informant, other than Poole or Woodson, could have been more than a mere tipster. The district court's refusal to reveal the identity of the informant did not compromise Fisher's right to a fair trial, and the trial court did not abuse its discretion in denying Fisher's motion to require the State to disclose the informant's identity.

Fisher further argues that the search warrant was not supported by probable cause. In determining whether probable cause supports the request for a search warrant, a magistrate must make a common-sense determination that the totality of the circumstances indicates that there is a fair probability that contraband or evidence of a crime will be found in the place subject to the request. See *State v. Abu-Isba*, 235 Kan. 851, Syl. ¶ 2, 685 P.2d 856 (1984). A

reviewing court should pay great deference to a magistrate's determination of probable cause. *State v. Bartlett*, 14 Kan. App. 2d 237, 238, 787 P.2d 1211, *rev. denied* 246 Kan. 769 (1990) (citing *Illinois v. Gates*, 462 U.S. 213, 236, 76 L. Ed. 2d 527, 103 S. Ct. 2317 [1983]). On appeal, this court must simply ensure that the magistrate had a substantial basis for concluding that probable cause existed. See 235 Kan. 851, Syl. ¶ 3.

The affidavit in support of the warrant request was largely based on statements made to police by a confidential informant. In such a case, the totality of the circumstances must include some indication that the magistrate could have reasonably determined that the informant's tip was accurate. See *State v. Sidel*, 16 Kan. App. 2d 686, 691, 827 P.2d 1215, *rev. denied* 250 Kan. 807 (1992). In *Gates*, the court explained that if an informant is known for reliable predictions of certain types of criminal activities in a locality, the failure to set forth thoroughly the basis of the informant's knowledge is not an absolute bar to a finding of probable cause based on the tip. 462 U.S. at 233. Detective Holsinger attested that the informant had previously supplied police in Labette County with reliable information concerning illicit drug activity in the area.

A confidential informant's statement that he observed the criminal activity firsthand lends credence to the reliability of the statement. *Gates*, 462 U.S. at 234. Here, the affidavit states that the confidential informant told police that Fisher himself had told the informant that Fisher would have crack cocaine for sale on May 3, 1995.

Where direct evidence of the informant's reliability or credibility is lacking, corroboration by independent police investigation may suffice. *Gates*, 462 U.S. at 242; *Sidel*, 16 Kan. App. 2d at 691. Here, the affidavit stated that the informant told police that Fisher lived with Poole, and that the manager at the apartment complex corroborated that Poole rented an apartment there, and that Fisher often stayed with her. The affidavit stated that the informant said Fisher had recently been graduated from the Labette Correctional Conservation Camp in Oswego and that Fisher had been in trouble for selling cocaine in the past. The affidavit stated that personnel at the camp confirmed that Fisher had recently completed time

there, and a computer check of Fisher's criminal record confirmed that Fisher had a prior conviction for possession of cocaine with intent to sell. Corroboration of information, even if such information, standing alone, would not indicate criminal activity, lends credence to the informant's tip that Fisher was engaged in criminal activity. See *Gates*, 462 U.S. at 243 n.13. The totality of the circumstances contained in the affidavit indicated that there was a fair probability that police would find crack cocaine in the apartment where the search was requested on May 4, 1995. Fisher's argument that the warrant was issued without probable cause is without merit.

The five forgery convictions are reversed. All other convictions are affirmed.