(32 P.3d 1219)
No. 85,221

STATE OF KANSAS, *Appellee,* v. PATRICK S. FREEL, *Appellant.*

Opinion filed October 5, 2001.

*Patrick H. Dunn,* assistant appellate defender, and *Jessica R. Kunen,* chief appellate defender, for appellant.

*Deborah L. Hughes,* assistant district attorney, *Robert D. Hecht,* district attorney, and *Carla J. Stovall,* attorney general, for appellee.

Before MARQUARDT, P.J., GERNON, J., and TIMOTHY E. BRAZIL, District Judge, assigned.

MARQUARDT, J.: Patrick S. Freel appeals his convictions for one count of possession of methamphetamine with the intent to sell, one count of failure to affix a drug tax stamp, and one count of possession of paraphernalia. We affirm in part, reverse in part, and remand with directions consistent with this opinion.

Deputy Phillip Higdon received a call from a confidential informant (CI) who stated that Freel was in possession of one or two "eight balls" of methamphetamine. The CI told the deputy where Freel's maroon station wagon was parked.

When Freel pulled out of the parking lot, he failed to come to a complete stop. Deputy John Schrock stopped Freel. As Schrock was checking Freel's driver's license and criminal history, Freel was acting extremely nervous. Schrock returned Freel's driver's license and asked if he would answer a few more questions. Freel agreed.

When Freel was asked if he had any drugs, he responded that he had no drugs. Schrock asked for permission to search Freel and his vehicle. Freel responded by asking "why" to both requests. Schrock told Freel that based on information obtained prior to the traffic stop, he was going to use his drug dog to make an exterior search of Freel's vehicle. Schrock testified that he felt threatened because Freel would not consent to the pat-down or place his hands on the car. Schrock handcuffed Freel and performed a pat-down search to ensure that Freel was not armed. No weapons or drugs were found.

Schrock walked the drug dog around the exterior of Freel's car. The dog never alerted to the presence of illegal drugs. Notwithstanding the officer's testimony to the contrary, Schrock encouraged the dog to go through an open window into Freel's automobile. In fact, the videotape in the record on appeal shows that Schrock pointed to the inside of the driver's window and said to the dog, "Check up here." The dog alerted in an area on the floor board. Schrock searched the car. There were no drugs in the immediate area of the dog's alert. Schrock opened the hatchback and found no drugs. At Schrock's request, another deputy performed a second pat-down search of Freel and still found no weapons or drugs.

Eventually, Schrock found a black case above the driver's side sun visor which contained methamphetamine, a pipe wrapped in tissue, a plastic baggie containing off-white powder, and several paper squares.

Freel was charged with one count of possession of methamphetamine with the intent to sell, one count of failure to pay Kansas drug tax, and one count of possession of drug paraphernalia. Freel filed a motion to suppress the evidence and a motion to disclose the CI's identity. Both motions were denied. Freel was convicted of all charges by a jury. He was sentenced to a controlling term of 24 months' imprisonment but was sent to the Labette Correctional Conservation Camp. Freel timely appeals.

### *Identity of the Confidential Informant*

Freel's defense was that someone else placed the drugs and paraphernalia in his vehicle. Freel alleges that the refusal to disclose the CI's identity prevented him from substantiating his defense that someone else planted the drugs in his car; thus, he was denied the opportunity to present a meaningful defense. Freel contends that the CI's information was no more reliable than an anonymous tip.

We review a trial court's ruling on a motion to require the State to reveal the identity of a confidential informant under an abuse of discretion standard. *State v. Fisher*, 24 Kan. App. 2d 103, 109, 942 P.2d 49 (1997). The identity of a confidential informant is

privileged unless the informant's identity has already been disclosed or disclosure is essential to assure a fair determination of the issues. K.S.A. 60-436. In deciding whether to require disclosure of the identity of a confidential informant, a court must balance the public interest in protecting the flow of information to law enforcement officials against the defendant's right to prepare his or her defense. 24 Kan. App. 2d at 109.

A "mere tipster" is an informant whose information precipitates an investigation. In contrast to the tipster, the "confidential informant," who actually engages in or observes the criminal activity of the defendant, is in a position to provide independent relevant evidence to the defense of the case. A mere tipster whose information precipitates an investigation is generally not subject to identity disclosure. *State v. Thomas,* 252 Kan. 564, 580-81, 847 P.2d 1219 (1993) (citing *State v. Washington,* 244 Kan. 652, 657-58, 772 P.2d 768 [1989]).

We agree with the trial court's conclusion that the CI was a mere tipster. The only evidence presented at trial as to the CI's reliability was that the CI called Deputy Higdon with information about Freel and had worked with the deputy for approximately 1 year. There was no corroboration of the tip or evidence that the CI witnessed a crime which involved Freel. The trial court did not abuse its discretion in refusing to grant Freel's motion to disclose the CI's identity.

### *Suppression of Evidence*

Freel contends that his detention and the searches of his person and automobile violated numerous provisions of § 15 of the Kansas Constitution Bill of Rights and the Fourth Amendment to the United States Constitution. Freel claims that because of these violations, the evidence should have been suppressed.

Freel cites *State v. Binette,* 33 S.W.3d 215 (Tenn. 2000), to support his assertion that this court should use a de novo standard of review in evaluating the trial court's refusal to suppress the evidence. In *Binette,* the review was de novo because the arresting officer did not testify at trial; however, there was a videotape of the incident. The Tennessee Supreme Court held that when a

court's findings of fact at a suppression hearing are based solely on evidence that does not involve issues of credibility, such as a videotape, the rationale underlying a deferential standard of review is not implicated. Thus, a de novo standard of review was found to be appropriate; however, this holding was expressly limited to the facts presented. 33 S.W.3d at 217.

The facts in the instant case differ from *Binette*. Here, the evidence included the videotape and the officers' testimony; therefore, we turn to the established standard of review for the suppression of evidence.

When reviewing a trial court's decision on the suppression of evidence, an appellate court normally gives great deference to the factual findings of the trial court. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate determination. *State v. Vandiver*, 257 Kan. 53, 58, 891 P.2d 350 (1995). An appellate court reviews the factual underpinnings of a trial court's decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. *State v. Toothman*, 267 Kan. 412, 416, 985 P.2d 701 (1999).

Freel does not challenge the legality of the initial traffic stop. He argues that once his driver's license and insurance information were returned to him, any further detention was an unreasonable seizure. Freel maintains that the evidence found after the conclusion of the traffic stop was the direct consequence of an illegal seizure and should be suppressed.

Deputy Schrock's detention of Freel after he returned Freel's license was based on the CI's statement that Freel had narcotics. The State contends that the CI provided probable cause to justify the warrantless search of Freel and his vehicle. Freel contends that there was only a minimal recitation from Deputy Higdon regarding the reliability of the CI and because the CI was being paid for providing the information, the tip is even more suspect.

An anonymous tip does not provide probable cause to support the issuance of a search warrant or an arrest even though it may support a *Terry* stop. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968). An individual may be stopped and

questioned if the officer has specific and articulable facts to suspect that the individual has committed or is about to commit a crime. *State v. Tucker*, 19 Kan. App. 2d 920, 924, 878 P.2d 855, *rev. denied* 255 Kan. 1007 (1994). The officers had a right to stop and question Freel.

The standard for justifying a stop differs from the standard that justifies searches and seizures. The Fourth and Fourteenth Amendments to the United States Constitution prohibit unreasonable searches and seizures. Under the Fourth Amendment, searches conducted without warrants are per se unreasonable, subject to a few well-delineated exceptions. *State v. Weas*, 26 Kan. App. 2d 598, 600, 992 P.2d 221 (1999), *rev. denied* 268 Kan. 895 (2000). The search of an automobile is an exception to the prohibition of a warrantless search because of its mobility. Warrantless searches of automobiles have been upheld where the danger to the public is clear and urgent, such as in cases where an automobile is being driven erratically and the driver's intoxication could lead to serious danger or death. See *Tucker*, 19 Kan. App. 2d 920.

Kansas has adopted the totality of the circumstances analysis set forth in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), for judging the credibility and reliability of information obtained from a confidential informant. *State v. Henry*, 263 Kan. 118, 127, 947 P.2d 1020 (1997). Where direct evidence of the informant's reliability or credibility is lacking, corroboration by independent police investigation may suffice. *Fisher*, 24 Kan. App. 2d at 111.

A tip from a known informant whose reputation can be assessed and who can be held responsible if his or her allegations turn out to be fabricated may exhibit sufficient indicia of reliability to provide reasonable suspicion to make an investigatory stop. See *Florida v. J.L.*, 529 U.S. 266, 270, 146 L. Ed. 2d 254, 120 S. Ct. 1375 (2000). The question here is whether there was a sufficient indicia of reliability in the CI's information to go beyond the investigatory stop to a search and seizure. The courts have held that caution must be used where the risk to the public is not urgent and there is time to verify all aspects of the tip, including the caller's relia-

bility. See *Tucker,* 19 Kan. App. 2d at 931. In the instant case, there was no risk to the public.

Our Supreme Court has held:

"Both reasonable suspicion and probable cause are dependent upon the content of information possessed by the detaining authority and the information's degree of reliability. Quantity and quality are considered in the 'totality of the circumstances—the whole picture' that must be taken into account when evaluating whether there is a reasonable suspicion. [Citation omitted.]" *State v. DeMarco,* 263 Kan. 727, 735, 952 P.2d 1276 (1998).

An individual is seized when an officer restrains his or her freedom, even if the detention is brief and falls short of an arrest. The scope and duration of a seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper. *State v. Schmitter,* 23 Kan. App. 2d 547, 550, 933 P.2d 762 (1997). Freel's detention lasted approximately 40 minutes. Approximately 13 minutes after the stop, Freel's license was returned to him and he was told that he was free to go. He agreed to answer some questions but never agreed to the pat-down or the search of his vehicle. Freel was detained for approximately 27 minutes after the initial stop had ended.

Freel cites *State v. Ballard,* 617 N.W.2d 837 (S.D. 2000), to support his claim that the stop turned into an unlawful seizure. In that case, a defendant was stopped for a traffic violation. The defendant refused to consent to a search of the vehicle after the completion of the traffic stop. Officers detained Ballard until a drug dog could be obtained. The South Dakota Supreme Court held that the continued detention of the defendant was impermissible under the Fourth Amendment. The court noted that it was insufficient for the officer to believe the defendant was "wired" and that a refusal to give consent to search is not justification for a search. 617 N.W.2d at 842.

Ballard was stopped after committing a traffic violation when no other information had been provided to the police. Ballard's continued detention was motivated by the officer's belief that she was "wired." Here, Freel's continued detention was motivated by the CI's information given to the police. In *Ballard,* the officer observed behavior that led him to believe there might be some safety

issue involved. Here, the only act the officers observed was that Freel was nervous. The Tenth Circuit Court of Appeals has held that nervousness alone is not sufficient to justify further detention. *U.S. v. McRae*, 81 F.3d 1528, 1534 n.4 (10th Cir. 1996).

Freel contends that the manner in which the drug dog was used violated his Fourth Amendment rights. Freel admits that the police were allowed to use the drug dog to sniff the exterior of his car. However, Freel takes issue with the fact that the drug dog was encouraged to enter into and sniff the interior of his vehicle. Freel maintains that the videotape shows Schrock facilitated the dog's entry into the car.

Freel relies on *U.S. v. Winningham*, 140 F.3d 1328 (10th Cir. 1998) to support his claim. In *Winningham,* agents stopped a van on the reasonable suspicion that it might be carrying undocumented aliens. After receiving permission to search, an agent opened the sliding door of the van to conduct a visual search of the interior. The door was left open as the agent asked permission to perform a search for drugs, to which the defendant consented. After the dog arrived, it was unleashed and it entered the open van door to perform a search of the van's interior, which resulted in the discovery of narcotics.

The Tenth Circuit found that the agents facilitated a sniff of the van's interior by opening the van door and unleashing the dog. Accordingly, the court found that the search was invalid and ordered that the evidence against the defendant be suppressed. 140 F.3d at 1332-33.

The State cites *U.S. v. Stone*, 866 F.2d 359 (10th Cir. 1989) as support for its position that the interior search of Freel's car was not an unlawful search. In *Stone,* the defendant was stopped for a traffic violation and an officer smelled an odor he identified as cocaine. After the driver refused consent to search, he was released, only to be met by authorities later. These officers had a drug dog, and when the driver opened the hatchback, the dog leapt in and alerted on a duffle bag. The significant difference between *Stone* and the instant case is that the officer smelled cocaine in *Stone;* there was no smell of drugs here.

The United States Supreme Court, the Kansas Supreme Court, and this court have held that the use of a narcotics dog does not constitute a search within the meaning of the Fourth Amendment. See *United States v. Place*, 462 U.S. 696, 707, 77 L. Ed 2d 110, 103 S. Ct. 2637 (1983); *State v. Barker*, 252 Kan. 949, 957, 850 P.2d 885 (1993); *State v. McMillin*, 23 Kan. App. 2d 100, 102-05, 927 P.2d 949 (1996). However, placing a dog inside the trunk or passenger compartment of a vehicle is an invasive search requiring probable cause. Just as an officer could not enter the passenger compartment or trunk of a vehicle to conduct a search without probable cause, neither can a dog be placed inside a vehicle on less than this standard. *U. S. v. Thomas*, 787 F. Supp. 663, 684 (E.D. Texas 1992).

Deputy Schrock testified that his search protocol with the dog starts at the front driver's side head lamp, goes across the front of the vehicle, and goes down to the rear of the vehicle and back. Schrock stated that he works "up and down" so the dog's head goes up to the window and then down under the car. Schrock further stated that he places his hands on particular areas of the vehicle and says "here" in order to get the dog to focus on a particular part of the vehicle. Schrock kept saying "come on" to the dog. Schrock testified that the phrase was said to keep the dog moving. He did not indicate that the phrase was significant for the dog.

Schrock repeatedly denied that he had encouraged the dog to enter Freel's car. The videotape in the record on appeal shows otherwise. We agree with Freel that Schrock encouraged the dog to enter into the car when it had not alerted on the exterior. We believe that the dog's entry into Freel's car was a violation of Freel's Fourth Amendment rights. The facts of this case fall directly in line with *Winningham*, 140 F.3d 1328. Taking into account the facts and the totality of the circumstances, this detention and search turned into an unlawful search and seizure and the evidence should have been suppressed. See *Ballard*, 617 N.W. 2d 837.

For all the above and foregoing reasons, we agree that the evidence against Freel should have been suppressed. The decision of

the trial court is reversed with instructions to continue the proceedings in a manner consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.