(71 P.3d 1173)
No. 88,603

STATE OF KANSAS, *Appellee*, v. MICHAEL ABBOTT, *Appellant*.

Opinion filed July 3, 2003.

*Patrick H. Dunn*, assistant appellate defender, for the appellant.

*Thomas R. Stanton,* deputy district attorney, and *Phill Kline,* attorney general, for the appellee.

Before MARQUARDT, P.J., PIERRON, J., and ROBERT J. FLEMING, District Judge, assigned.

PIERRON, J.: Michael Abbott appeals his conviction after a bench trial on stipulated facts to one count of possession of methamphetamine with intent to sell and one count of possession of drug paraphernalia. Abbott argues that officers conducted an illegal search, insufficient evidence existed linking him to the drug paraphernalia found in the van, and the Court of Appeals has jurisdiction to consider this appeal.

The parties stipulated to the facts below. The question is whether the facts rise to a violation of protections afforded under the Fourth Amendment to the United States Constitution and §15 of the Kansas Constitution Bill of Rights.

On April 22, 1999, Detective Howard Shipley received information from a confidential informant (CI) that Abbott would be traveling to Haven, Kansas, around 10:30 p.m. in a two-toned Chevrolet van to buy methamphetamine from Greg Proffitt. Shipley testified that he assumed Abbott would be driving the van. Shipley believed Proffitt was involved in methamphetamine distribution, so he drove an unmarked car to Proffitt's home and waited.

At approximately 10:45 p.m., the confidential informant called Shipley and told him Abbott had left Hutchinson en route to Haven. Around 11:30 p.m., a two-toned GMC van arrived at Proffitt's home. The van left 20-30 minutes later. Shipley tailed the van, and after several maneuvers by both vehicles which resulted in each being alternatively behind the other, the van pulled into a residential driveway. Shipley activated his emergency lights and partially blocked the van. Shipley testified that as he approached the van, he saw movement in the middle and back seats, which caused him to be concerned for his safety.

The driver of the van was Leslynn Cochran. Her husband, Clarence Cochran, sat in the middle section on the right side and Abbott sat in the third, or back, row of seats. When asked about their activities, Leslynn said they were simply driving around in the

country. Clarence replied they were looking for UFOs. Dispatch informed Detective Shipley that Leslynn's driver's license was valid and there were no outstanding warrants for any of the occupants of the van.

Detective Shipley ordered everyone out of the van. After a pat-down weapons search of all three individuals, he searched the van. Inside a pocket on the back of the second row of seats, Shipley found a black pouch containing ziplock baggies, a set of electronic scales, a razor blade, and a business card folded into a funnel. In the other pocket on the back of the second row of seats, Detective Shipley found a glass pipe used for smoking methamphetamine.

Detective Shipley arrested Abbott for possession of drug para-. phernalia. He did not arrest either of the Cochrans. During a search at the jail, Detective Shipley seized a pouch from Abbott's underwear that contained four baggies of methamphetamine, one baggie containing methamphetamine residue, and two empty plastic baggies. Abbott had $616 in his billfold.

The State charged Abbott with possession of methamphetamine with intent to sell and possession of drug paraphernalia. Abbott pled not guilty at arraignment. Abbott filed a motion to suppress, arguing there was no probable cause to search the van or to arrest him for possession of drug paraphernalia. After a full evidentiary hearing, the court denied Abbott's motion to suppress. Abbott waived his right to a jury trial and submitted the case to the court on stipulated facts adduced at the suppression hearing, the Kansas Bureau of Investigation reports, and the custody sheet. The parties announced the intent of the stipulation was to allow Abbott to preserve his right to appeal the district court's ruling on the motion to suppress.

On October 22, 1999, the district court granted a downward departure and sentenced Abbott to 34 months' incarceration. That same day, Abbott's trial counsel filed a notice of appeal. The case lay dormant until December 11, 2001, when district court judge Tim Chambers entered an order of dismissal based on Abbott's failure to docket his appeal. On January 4, 2002, district court judge Richard Rome reinstated Abbott's appeal and appointed the Appellate Defender's Office to represent Abbott. The court stated

Abbott's trial counsel did what was required of him by filing the notice of appeal and stated appellate courts are liberal in allowing appeals to go forward. The court made no ruling on whether it had the power to enter an order to reinstate the appeal pursuant to the Supreme Court Rules.

The parties were ordered by this court to address the jurisdiction of the appeal based on the State's motion to dismiss. We denied the State's motion on present showing. The basis for the motion to dismiss was whether the district court had the authority to reinstate the appeal under Supreme Court Rule 5.051 (2002 Kan. Ct. R. Annot. 32) after it had previously dismissed the appeal for failure to timely docket the case in the appellate courts. The State did not address this issue on appeal and has asked to withdraw the motion to dismiss.

The State has not presented any additional information not previously provided in its motion to dismiss. We will not change our previous ruling. There appear to be obvious issues regarding whether Abbott was furnished an attorney to appeal or whether his attorney failed to perfect and complete an appeal. See *State v. Ortiz*, 230 Kan. 733, Syl. ¶ 3, 640 P.2d 1255 (1982).

We next turn to the motion to suppress. As an initial matter, the State contends Abbott failed to preserve the suppression issue for appeal by failing to object to the evidence when it was admitted upon a stipulation of the facts.

Abbott argues invited error by the State. "A litigant may not invite and lead a trial court into error and then complain of the trial court's actions on appeal." *State v. Saleem*, 267 Kan. 100, Syl. ¶ 5, 977 P.2d 921 (1999). He contends the State cannot agree in the district court with the defendant's intent to stipulate in order to have the appellate court decide the suppression issue and then argue on appeal that the issue was not properly before the court, under the contemporaneous objection rule.

In *State v. Downey*, 27 Kan. App. 2d 350, 2 P.3d 191, *rev. denied* 269 Kan. 936 (2000), Downey faced charges of rape and aggravated criminal sodomy. He filed a motion to suppress photographic evidence and his statements to the police, but the court denied the motion. Downey waived his right to a jury trial and agreed to be

tried on stipulated facts. Prior to the State's reading of the stipulated facts, defense counsel stated: "Mr. Downey would like to avoid the expense and the jeopardy to him of a trial, a formal extensive trial, but still preserve his rights of appeal. Especially the Court's rulings on the two motions we heard this morning." 27 Kan. App. 2d at 361. At oral argument, the State conceded that it had made an agreement with Downey allowing for the preservation of the issues for appeal.

The *Downey* court held that Downey had failed to properly preserve the suppression issues for appellate review. The court stated that parties cannot devise their own rules of evidence and Downey's failure to renew any objection to the photographs and confession when the State presented evidence of such in the stipulation deprived him of appellate review. The *Downey* court set forth the following summary:

"[W]e find that Downey waived his right to argue that the trial court erred in admitting the photographic evidence and confession because: (1) Downey agreed to the stipulation which included facts regarding the photographs and confession; (2) Downey did not object when the evidence was introduced at trial; and (3) Downey's alleged agreement with the State regarding preservation of issues for appeal was not done on the record." 27 Kan. App. 2d at 362.

*Downey* was decided on April 14, 2000. Abbott was charged on June 26, 1998, the motion to suppress was denied on July 9, 1999, and the court entered the stipulation and found Abbott guilty on August 6, 1999. The State realizes Abbott's case predates *Downey*, but argues that *Downey* suggests that because no objection appeared in the record, the issues were not preserved for appeal.

It appears that the facts of the instant case are similar to those in *Downey*. However, we are not convinced that the same conclusion should be reached.

As far as preserving the agreement on the record, *Downey* may be distinguishable. In *Downey*, defense counsel informed the court of the agreement and its intended purpose. In the present case, it was the prosecutor who acknowledged the agreement before the court. The prosecutor said: "Your Honor, I believe basically, if you recall from the motion to suppress hearing, the facts of this case were very simple and I believe Mr. Granger's only issue was to the

motion to suppress which I think he is seeking to appeal by doing it in this manner."

Here, there is no doubt that Abbott was continuing to object to the search and wished to appeal on that issue. In fact, that is essentially what the State said to the court.

To preserve a search and seizure issue for appeal, there must usually be an objection to the evidence through a motion to suppress so the issue can be thoroughly examined before the trial court. In addition, whether tried to a jury or the court, at trial there must be a clear statement to the court that there is a continuing objection to the evidence.

In the instant case, both things occurred, although not in the usual formal manner of Abbott saying precisely that he was making a continuing objection. Here, the State noted that the case was simple—Abbott was continuing to object and intending to appeal on that ground. Abbott certainly did not disagree.

It would have been preferable for Abbott to make a formal statement of a continuing objection, but since there had been a suppression hearing and ruling against Abbott, which the trial court gave no indication would be decided differently a second time, we believe the State's comment to the court sufficed to preserve the objection.

The contemporaneous objection rule acts as a means to allow the orderly presentation of evidence and timely rulings by the court as to alleged errors. Under these facts, there is no question this was accomplished. We do not interpret the contemporaneous objection rule in a purely technical way so that it acts as a trap for the slightly unwary, so that the purpose of the rule has been clearly accomplished in the court proceedings. We believe the issue was preserved for appeal.

Abbott next argues Detective Shipley violated the Fourth Amendment and § 15 of the Kansas Constitution Bill of Rights by illegally searching and seizing the van. Abbott contends the State failed to show that Detective Shipley's confidential informant (CI) was reliable or the basis of the CI's knowledge, that the detention of the van constituted an illegal seizure, and that the warrantless search of the van was illegal.

When reviewing a motion to suppress evidence, an appellate court reviews the factual underpinnings of a district court's decision by a substantial competent evidence standard and the ultimate legal conclusion drawn from those facts by a de novo standard. An appellate court does not reweigh the evidence. The ultimate determination of the suppression of evidence is a legal question requiring independent appellate review. *State v. Alvidrez*, 271 Kan. 143, 145, 20 P.3d 1264 (2001).

The facts in this case are not disputed by the parties. Consequently, the question of whether to suppress is a question of law over which this court has unlimited review. *State v. Jones*, 270 Kan. 526, 527, 17 P.3d 359 (2001).

Abbott argues the State failed to show that the CI was reliable or the basis for the CI's knowledge.

Kansas has adopted the totality of the circumstances analysis set forth in *Illinois v. Gates*, 462 U.S. 213, 76 L. Ed. 2d 527, 103 S. Ct. 2317 (1983), for judging the credibility and reliability of information obtained from a confidential informant. *State v. Henry*, 263 Kan. 118, 127, 947 P.2d 1020 (1997). Where direct evidence of the informant's reliability or credibility is lacking, corroboration by independent police investigation may suffice. *State v. Fisher*, 24 Kan. App. 2d 103, 111, 942 P.2d 49 (1997).

In the present case, the tip information came from a confidential informant, not a mere tipster. The Court in *State v. Freel*, 29 Kan. App. 2d 852, Syl. ¶ 2, 32 P.3d 1219 (2001), distinguished a CI from a mere tipster by stating that a confidential informant who "actually engages in or observes the criminal activity of the defendant is in a position to provide independent relevant evidence to the defense of the case."

Here, the CI had given information to Detective Shipley on prior occasions and the information had always been true. Detective Shipley testified the CI knew Abbott and that as part of an investigation, the CI had previously performed a controlled buy of methamphetamine from Abbott. The CI told Detective Shipley that Abbott was going to Haven, Kansas, to purchase methamphetamine from Greg Proffitt and that Abbott would be in a two-toned Chevrolet van. Detective Shipley knew Proffitt was a long-time

distributor of methamphetamine. The CI told Shipley that Abbott would arrive around 10 p.m., but that was later changed by the CI to around 11:30 p.m.

Detective Shipley was able to verify virtually all of the information given by the CI prior to the stop of the van. The one remaining unknown was whether Abbott had methamphetamine in his possession. Although Abbott points out that the van was a GMC instead of a Chevrolet, and that there were two other people in the van with Abbott, this does not nullify the tip. We apply a totality of the circumstances analysis for judging the credibility and reliability of information obtained from a confidential informant. *Henry*, 263 Kan. at 127. We find the information from the confidential informant was sufficiently reliable and verified by Detective Shipley.

Next, Abbott states that he does not contest the initial stop of the van, but he challenges the seizure of the occupants once all the license and warrant checks came back clean. He contends the van should have been free to go, but instead Detective Shipley detained the group while he illegally searched the van. He argues the evidence obtained from the search is fruit of the poisonous tree and should be suppressed.

Abbott cites *Freel* and *State v. Ballard*, 617 N.W.2d 837 (S.D. 2000), to support his contention of the illegality of the search and seizure. *Ballard* is distinguishable because in that case there was no information from a confidential informant and the subsequent detention of the defendant was based on the defendant's looking "wired." 617 N.W.2d at 841.

Although *Freel* concerned a search and seizure based on a confidential informant, that issue was secondary to the real issue of whether a drug dog could sniff the interior of the defendant's car. In *Freel*, a car driven by a man suspected of possessing narcotics was stopped by the police, following a tip from a confidential informant. The only information recited in *Freel* concerning the tip was that a confidential informant told a police officer that the defendant had methamphetamine and would be in a maroon station wagon. Upon removing the defendant from the car, an officer walked a narcotics dog around the exterior of the car. The dog

jumped into the car and alerted on the floorboard, where the police did not find any drugs. Eventually, drugs were found behind a sun visor. The defendant contended the dog's entry into the car was unreasonable. The defendant there argued that the police "facilitated the dog's entry into the car." 29 Kan. App. 2d at 859. We held that the contraband should have been suppressed because the dog's entry into the car constituted an unreasonable search. 29 Kan. App. 2d at 860-61.

Under the Fourth Amendment to the United States Constitution, searches conducted without warrants are per se unreasonable, subject only to a few specifically established and well-delineated exceptions. *State v. Platten*, 225 Kan. 764, 769, 594 P.2d 201 (1979). The State argues the exception applicable in this case is that probable cause existed for the search of Abbott and the van in which he was riding and exigent circumstances necessitated a warrantless search. Abbott argues none of the exceptions apply to his case.

The more properly applicable exception is the automobile exception. The automobile exception may allow the warrantless search of a car when probable cause has been established to justify a search. *Carroll v. United States*, 267 U.S. 132, 69 L. Ed. 543, 45 S. Ct. 280 (1925); *State v. Jaso*, 231 Kan. 614, Syl. ¶ 2, 648 P.2d 1 (1982).

Probable cause is the reasonable belief that a specific crime has been committed and that the defendant committed the crime. It does not require evidence of each element of the crime or evidence to the degree necessary to prove guilt beyond a reasonable doubt. *State v. Mayberry*, 248 Kan. 369, 377-78, 807 P.2d 86 (1991). The court in *State v. Hays*, 221 Kan. 126, Syl. ¶ 1, 557 P.2d 1275 (1976), stated probable cause exists where "the facts and circumstances within the knowledge of the officer making the arrest or search, and of which he had reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed."

Detective Shipley had probable cause to search the van based on the information he obtained from the CI and the verification of the information prior to his stop of the van. The totality of the

circumstances apparent to Detective Shipley would certainly rise to the level of probable cause necessary for obtaining a search warrant. "[A] search warrant shall be issued upon oral or written application which states facts sufficient to show probable cause that a crime has been or is being committed and which particularly describes the person, place, or means of conveyance to be searched." *State v. Longbine*, 257 Kan. 713, 717, 896 P.2d 367 (1995). We find there was probable cause and that the automobile exception authorized the warrantless search of the van. The search was not unreasonable under §15 of the Kansas Constitution Bill of Rights or the Fourth Amendment to the United States Constitution.

We do not find the search and seizure of Abbott and the van were illegal. Consequently, the evidence discovered was not the fruit of an illegal search. The district court did not err in denying Abbott's motion to suppress.

Abbott finally argues there is insufficient evidence to support his conviction for possession of drug paraphernalia. Abbott contends the evidence was insufficient because he was in nonexclusive possession of the drug paraphernalia discovered in the van.

When the sufficiency of the evidence is attacked, the standard of review is whether, after review of all the evidence, viewed in the light most favorable to the prosecution, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Zabrinas*, 271 Kan. 422, 441-42, 24 P.3d 77 (2001).

This is not a case of nonexclusive possession of drug paraphernalia. See *State v. Rios*, 19 Kan. App. 2d 350, 869 P.2d 755 (1994) (marijuana found in trunk of car that had two occupants and no other evidence linking defendant to drugs). When Detective Shipley approached the van, Abbott was seated in the rear seat of the van. The items of drug paraphernalia were discovered in the back of the middle row of seats. Abbott was seated in the back of the van with the items immediately in front of him. We are convinced

that a rational factfinder could have found Abbott guilty beyond a reasonable doubt.

Affirmed.