**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 1998**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

     Plaintiff-Appellant,

v.

KENNETH HERMAN WINNINGHAM,

     Defendant-Appellee.

No. 97-2105

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
(D.C. No. 96-CR-613)

---

John J. Kelly, United States Attorney (Mick I.R. Gutierrez, Assistant United States Attorney, with him on the briefs), Las Cruces, New Mexico, for Plaintiff-Appellant.

Peter E. Edwards, Assistant Federal Public Defender (Ann Steinmetz, Federal Public Defender, with him on the brief), Las Cruces, New Mexico, for Defendant-Appellee.

---

Before **PORFILIO**, **MCKAY,** and **BRISCOE**, Circuit Judges.

---

**PORFILIO**, Circuit Judge.

---

    The government appeals a district court order suppressing evidence obtained by

using a trained dog to perform a roadside search of a van.  The government argues: (1)

*United States v. Stone*, 866 F.2d 359 (10th Cir. 1989), controls this case and places the drug dog's activity outside the scope of the Fourth Amendment; and (2), in any event, the driver's consent cures any potential Fourth Amendment violation. We conclude *Stone* does not apply in this instance and the consent was involuntarily given. We therefore affirm.

## I. Background

Acting on information, New Mexico border patrol agents stopped a van on the reasonable suspicion it might be carrying undocumented aliens. Agent Carlos Almengor approached the van to question the occupants while three other border patrol agents stood nearby, behind the van, as backup. Agent Almengor asked the driver, Mr. Kenneth Winningham, and his passenger, Mr. Navarrete, for citizenship papers. Mr. Winningham and Mr. Navarrete produced papers indicating they were legally within the United States. Agent Almengor told Mr. Winningham he had information Mr. Winningham's van was being used to smuggle illegal aliens into the United States and asked to search the van. Mr. Winningham consented. Agent Almengor asked Mr. Winningham and Mr. Navarrete to step out of the van and stand near the other three border patrol agents.

Agent Almengor opened the sliding door of the van and conducted a visual search of its interior. Finding no one inside, Almengor left the van door open, told Mr. Winningham he also had information the van was carrying narcotics, and asked permission to "run a dog on [the] vehicle." Mr. Winningham agreed. Because the agents

did not have a drug dog with them, Mr. Winningham, Mr. Navarrete, and the four border patrol agents waited five or six minutes for the dog and two other agents to arrive.

Throughout the encounter, whenever Mr. Winningham or Mr. Navarrete moved, the border patrol agents moved with them. At one point, Mr. Winningham appeared to be moving away from the van and up a nearby hill, and one of the agents moved with Mr. Winningham, prepared to intercept him should he take flight. At the suppression hearing Agent Almengor admitted, although Mr. Winningham was supposed to be free to leave at that point, the agents were "trying to keep him there." Agent Robert Palacios, the dog handler, arrived with another agent and the drug dog, bringing the number of armed and uniformed agents to six.

Agent Palacios started the dog at the front passenger side of the van. Palacios testified he observed a "just noticeable difference" in the dog's conduct as he and the dog reached the rear of the van. Palacios unleashed the dog. The dog continued to sniff, moving around the right side of the van. When the dog reached the open door, he jumped into the van and methodically sniffed the van's interior. Eventually the dog alerted at a rear vent. Inside the vent, the agents discovered 50 kilograms of marijuana.

Mr. Winningham was arrested for possession of marijuana with intent to distribute. In a pretrial motion, Mr. Winningham moved to suppress the evidence borne of the stop. Following closing argument in the suppression hearing, the district court announced it

would review the court reporter's notes and make a ruling on the motion. After reviewing

the notes, the court returned and made the following statement:

> The transcript reflects that Agent Almengor asked for permission to run a
> dog on the vehicle, and this was granted. Consent is not to be lightly
> inferred or unnecessarily extended. Whether or not voluntary consent was
> given is a question of fact based on the totality of the circumstances.
>
> Under all the circumstances, and particularly the fact that the defendant at
> one point attempted to back up and apparently leave, I'm going to find that
> there was ***no voluntary consent for the dog to enter the cabin of the van***
> and suppress the evidence. So defendant's motion will be granted.[1]

(emphasis added). The government filed a motion to reconsider, arguing ***Stone*** placed

the dog's activities outside the scope of the Fourth Amendment. The district court denied

the government's motion for reconsideration and issued a written order suppressing the

narcotics. In the order, the district court noted the consent problem, but granted

suppression on the ground the second interior search of the van exceeded the scope of Mr.

Winningham's consent. The government appealed.

## II. *United States v. Stone*

The government argues ***United States v. Stone***, 866 F.2d 359 (10th Cir. 1989), is

the controlling authority in this case and the district court erred by distinguishing the case.

In ***Stone***, we held the Fourth Amendment was not implicated when a trained drug dog

leapt into the open hatchback door of a suspect's car during a valid ***Terry*** stop because

---

[1]Although the dissent asserts we have mischaracterized the court's finding, these words speak for themselves. The district court simply found the defendant's consent to the entry of his van by the dog was involuntary.

the dog's action was "instinctive." Acting on reasonable suspicion that Mr. Stone possessed narcotics, police officers stopped his car and asked to see a citation he had received earlier in the day. Mr. Stone opened his hatchback door to retrieve the citation and, while the door was open, an officer's drug dog leapt into the rear of the car and alerted on a duffel bag. The police then searched the duffel bag and the car and discovered narcotics. Mr. Stone was arrested and charged with possession of narcotics with intent to distribute.

Although the officers in ***Stone*** had reasonable suspicion justifying the stop, until the dog alerted on the duffel bag, the ***Stone*** court reasoned, the officers had no probable cause to search Mr. Stone's vehicle. *Id.* at 362-63. The dog, the court observed, "created a troubling issue under the Fourth Amendment" because he did not key on the duffel bag until he was inside Mr. Stone's car. *Id.* at 363. If the dog's leap into the car violated the Fourth Amendment, police were not entitled to draw probable cause from the dog's alert, and the resulting search was illegal. Based on the facts of Mr. Stone's case, we decided the dog's leap did not implicate the Fourth Amendment. *Id.* at 364.

Mr. Winningham's case differs from ***Stone*** in two material respects, either of which, in our opinion, renders ***Stone*** inapposite. First, our holding in ***Stone*** was driven not by what the officers *did*, but what they did *not* do:

> There is no evidence, nor does Stone contend, that the police asked Stone to open the hatchback so the dog could jump in. Nor is there any evidence the police handler encouraged the dog to jump in the car. The judge asked the Officer in charge of the dog: "So you didn't encourage him or discourage

> him from jumping into the back?" And the Officer replied: "That's correct. I just let his leash go and let him go where his nose would take him." In these circumstances, we think the police remained within the range of activities they may permissibly engage in when they have reasonable suspicion to believe an automobile contains narcotics.

*Stone*, 866 F.2d at 364. In Mr. Winningham's case, the officers themselves opened the door, allowing the van to sit on the side of the highway with the sliding door wide open for a period of at least six minutes until the drug dog could arrive. The dog handler then unleashed the dog as the dog neared the open door. A desire to <u>facilitate</u> a dog sniff of the van's interior, absent in *Stone*, seems readily apparent here.[2]

Second, the officers in *Stone* acted under reasonable suspicion, a circumstance underscored by our limited holding. *Id.* (holding, "[i]n these circumstances, we think the police remained within the range of activities they may permissibly engage in <u>when they have reasonable suspicion to believe an automobile contains narcotics</u>" (emphasis added)). In the present case, however, as we discuss in Part III, reasonable suspicion was exhausted after Officer Almengor searched the van's interior. The subsequent police activity — detaining the van for six minutes to await the dog and allowing the dog to sniff

---

[2]The dissent infers more from this statement than intended. We do not state, nor do we imply, the officers "encouraged" the dog to enter the vehicle. We do, however, draw a distinction between this case and *Stone* based upon the conduct of the officers that "facilitated" the dog's entry into the van. In *Stone* the defendant himself opened his vehicle and provided an opportunity for the dog to jump through the opening. Here, it was Agent Almengor who opened the door to the van, thus creating the opportunity. This fact is in the testimony and clear from the record. Citing it does not depend upon an assessment of the credibility of the witness.

any portion of the van, internal or external — was permitted, if at all, by Mr. Winningham's consent, not by reasonable suspicion. Because the range of acceptable police activity in the absence of reasonable suspicion may differ considerably from the range of acceptable police activity in the presence of reasonable suspicion, we see no reason to find *Stone* controlling here. *Stone* is therefore distinguishable on both factual and legal grounds and is not controlling authority in this case.

### III. Consent

Agent Almengor testified, the district court found, and we agree, when Agent Almengor opened the van door and found no undocumented aliens inside and no articulable reason to suspect the presence of narcotics, he exhausted the reasonable suspicion upon which the stop was predicated. Any further interaction between Agent Almengor and Mr. Winningham required Mr. Winningham's consent. *United States v. Peters*, 10 F.3d 1517, 1522 (10th Cir. 1993) ("[I]f probable cause is not developed during a *Terry*-type encounter, the officer must release the suspect. . . . Absent a new and independent basis for suspicion, the officer must halt his investigation in accordance with *Terry* and *Place*." (citing *Terry v. Ohio*, 392 U.S. 1 (1968), and *United States v. Place*, 462 U.S. 696 (1983))). We therefore consider the validity of Mr. Winningham's consent.

When a search is conducted pursuant to a suspect's consent, the government bears the burden of proving consent and must show by "clear and positive testimony that consent was unequivocal and specific and freely given . . . without duress or coercion,

express or implied." ***United States v. McKneely***, 6 F.3d 1447, 1453 (10th Cir. 1993) (citing ***United States v. Butler***, 966 F.2d 559, 562 (10th Cir. 1992)). The voluntariness of consent is a question of fact to be determined from the totality of the circumstances. ***United States v. Werking***, 915 F.2d 1404, 1409 (10th Cir. 1990). Here, the district court, after reviewing the suppression hearing transcripts, made an oral finding "that there was no voluntary consent for the dog to enter the cabin of the van." We will accept this finding unless it is clearly erroneous. ***United States v. Wright***, 932 F.2d 868, 878 (10th Cir. 1991).

In determining whether consent was obtained "without duress or coercion, express or implied," we will consider, among other factors, whether the consent request occurs during the suspect's detention, ***United States v. Nicholson***, 983 F.2d 983, 988 (10th Cir. 1993); whether the officer fails to inform the suspect he or she was free to leave or refuse consent, ***United States v. Orrego-Fernandez***, 78 F.3d 1497, 1505 (10th Cir. 1996); whether the person granting consent exhibits discomfort during the search or expresses a desire to halt the search, ***United States v. McRae***, 81 F.3d 1528, 1537 (10th Cir. 1996); ***United States v. Corral***, 899 F.2d 991, 994 (10th Cir. 1990); and whether multiple officers are present, ***United States v. Soto***, 988 F.2d 1548, 1558 (10th Cir. 1993).

At the time Agent Almengor asked Mr. Winningham for consent to "run a dog on the vehicle," Mr. Winningham knew Agent Almengor had taken a specific interest in him and his van; this was not an ordinary traffic stop. Mr. Winningham had been asked to

step out of his vehicle and told to stand near three armed and uniformed officers. At no time during the encounter was Mr. Winningham told he had a right to refuse consent and, although Agent Almengor had exhausted the reasonable suspicion that had initially justified the stop, Mr. Winningham was not told he was free to leave. During the search, Mr. Winningham began to move away from the van, up a hill near the roadside, only to find his progress blocked by the attending agents. In short, Mr. Winningham's case demonstrates several of the factors indicative of involuntary consent. Although each of these factors would not, by themselves, raise doubt regarding Mr. Winningham's consent, given the presence of multiple relevant factors and the totality of the circumstances, we cannot conclude the district court clearly erred in finding Mr. Winningham's consent involuntary; nor can we conclude the government has shown, as it must, that Mr. Winningham's consent was obtained "without duress or coercion, express or implied." *McKneely*, 6 F.3d at 1453 (citing *United States v. Butler*, 966 F.2d 559, 562 (10th Cir. 1992)). Absence of voluntary consent alone would render the subsequent search illegal and justify suppression of the narcotics in this case; therefore, we need not consider whether the district court erred in concluding the second search exceeded the scope of Mr. Winningham's consent.

Because the dissent questions our review of the district court's conclusions, we reflect specifically upon the written findings of fact made by the district court which state: "Agent Almengor did not request and Defendant did not grant permission for the dog to

search inside the Van." In reference to the apparent attempt by the defendant to "back up and apparently leave" while the dog was walking around the van, the court also noted: "Although this raises a question as to whether Defendant was 'detained' and whether he felt compelled to permit the dog 'on the Van,' this Court did not grant the motion on this basis." (citation omitted). Indeed the court's written conclusion was focused upon Agent Almengor's use of the curiously ambiguous phase "on the van"; holding permission to "run a dog on the van" could not be understood as consent for the animal to enter the vehicle.

These conclusions notwithstanding, the district court did not refute its earlier oral finding regarding the involuntary nature of the defendant's consent. It merely decided, without explanation, to walk down a different path. That decision does not preclude us from relying on the oral finding, however, because we may affirm the district court on a wholly different basis so long as our decision finds support in the record. ***Bolton v. Schrivener***, 36 F.3d 939, 942 (10th Cir. 1994) (The appellate court may affirm summary judgment "on grounds other than those relied on by the district court when the record contains an adequate and independent basis for that result.").

## IV. Conclusion

Because ***United States v. Stone*** differs both factually and legally from the present case, the district court correctly distinguished it. Upon reviewing the totality of the circumstances surrounding Mr. Winningham's stop, we are unable to conclude the district

court clearly erred in finding Mr. Winningham's consent was involuntarily given. Involuntary consent renders the resulting search invalid, and we therefore **AFFIRM** the district court order granting Mr. Winningham's motion to suppress the evidence discovered during the roadside search of his van.

No. 97-2105, <u>United States v. Winningham</u>

BRISCOE, Circuit Judge, dissenting:

I respectfully dissent. I believe <u>United States v. Stone</u>, 866 F.2d 359, 364 (10th Cir. 1989), controls the outcome of this case and cannot be distinguished. Further, I believe the majority is mischaracterizing the district court's findings and conclusions regarding Winningham's consent. The court did not conclude Winningham's consent to use of a drug detection dog was involuntary, but rather it concluded the dog's entering the van exceeded the scope of the consent voluntarily given. Specifically, the court concluded Winningham's consent to "run a dog on the vehicle" was not a consent to permit the dog to enter the vehicle. Therefore, by reviewing a conclusion that Winningham's consent was involuntary, the majority is reviewing a conclusion the district court did not make.

In <u>Stone</u>, we affirmed the district court's decision to deny suppression of evidence located by the instinctive actions of a drug detection dog. We agreed with the conclusion of the district court in <u>Stone</u> that the dog's instinctive actions did not violate the Fourth Amendment. As in the present case, the court there did not find the dog handler had encouraged the dog to jump into the vehicle. In reviewing the district court's denial of Stone's motion to suppress, we considered the totality of the circumstances and viewed the evidence in a light most favorable to the government. See <u>United States v. Wood</u>, 106 F.3d 942, 945-46 (10th Cir. 1997). Similarly, in reviewing the district court's suppression of the marijuana

located in Winningham's van, we view the evidence in a light most favorable to Winningham, accept the court's factual findings, unless clearly erroneous, and review the court's legal conclusions de novo.  Id.  As in Stone, we are not permitted on appeal to judge the credibility of witnesses, determine the weight to be afforded testimony, or draw reasonable inferences or conclusions from the testimony, as these are matters within the exclusive province of the district court. See United States v. Gutierrez-Daniez, 131 F.3d 939, 940 (10th Cir. 1997).

The majority holds Stone does not apply because Agent Palacios, the canine handler, encouraged the dog to jump into Winningham's van.  The district court did not make a factual finding that Agent Palacios encouraged the dog to enter Winningham's van and a review of the record further refutes this conclusion.  As regards the actions of the officers prior to the dog's entry into the van, the court found: "As Agent Palacios brought [the dog] around the back of the Van, the dog began 'to act on his own.'  Agent Palacios then released Sam who ran inside the Van through the door Agent Almengor had opened and began pawing a vent in the rear of the Van."  Record I, Doc. 46 at 2.  The majority describes the path of the dog around the van and concludes since Agent Palacios unleashed the dog near the open door of the van, he encouraged the dog to enter the van.  However, Agent Palacios testified:

> Q.  . . . Now, you ran the dog, you said, starting at the left front end?
> A.  Yes, sir.

Q. And which direction did the dog go from there?

A. We started going south, working towards the back of the vehicle, and then around.

Q. Through the side of the driver?

A. Right.

Q. Okay.

A. On the left side.

Q. When you run the dog around the vehicle, is the dog on a leash?

A. In that case, being so close to the interstate, I keep the dog on the leash.

Q. So now you're walking the dog around on the leash, and you said there was a JND [Just Noticeable Difference]? . . . .

A. On the back, once he got towards the back, he started to show-- it's something that you notice that the dog does, like he starts working a scent.

Q. What specifically can you recall on that?

A. He started going up and down, back underneath, and working where he went into the vehicle on his own. He jumped into the vehicle, working the scent.

Q. You allowed him to do that since he was still on a leash; is that correct?

A. I let him go.

Q. He was off the leash then?

A. Once he started working and he was off the interstate side, I let him go.

Record II at 51-52. Thus, the record clearly reflects Agent Palacios led the dog around the entire length of the van, unleashing him at the back of the van only after he had alerted and was no longer in danger of being struck by oncoming vehicles. Even viewing the evidence in a light most favorable to Winningham, the record does not support the conclusion that Agent Palacios unleashed the dog near the open door of the van, thereby encouraging the dog to enter the van.

-3-

Regardless of the path taken around the van, the district court did not find and the record does not demonstrate that Agent Palacios encouraged the dog to jump into the van. Agent Almengor already had opened the side door of the van to look inside for illegal aliens before the drug detection dog arrived. He testified that "[t]he dog just, on its own, went into the vehicle because the side door that I had opened was left open." Id. at 27. These circumstances are indistinguishable from those in Stone where the canine handler testified he unleashed the dog and "let him go where his nose would take him." 866 F.2d at 364. The distinction that here Agent Almengor opened the side door of the van while in Stone, defendant himself opened the hatchback of his car, is insignificant. Winningham consented to Agent Almengor opening the side door of the van.

To reach the conclusion that the agents did not encourage the drug detection dog to enter Winningham's van, one need not judge the credibility of witnesses, determine the weight to be afforded testimony, or draw inferences or conclusions from the testimony. This conclusion is based upon the district court's factual findings. Viewed in a light most favorable to Winningham, the court did not find the agents encouraged the dog to enter the van. Instead, the court found when Agent Palacios brought the drug detection dog around the van, "the dog began 'to act on his own.'" Record I, Doc. 46 at 2.

The majority also states that "the range of acceptable police activity in the absence of reasonable suspicion may differ considerably from the range of acceptable police activity in the presence of reasonable suspicion." Majority Op. at 6. Therefore, the majority reasons since the agents did not have reasonable suspicion to detain Winningham when the dog jumped into the van, Stone does not control. The district court did not distinguish Stone on these grounds but if it had, we would review the conclusion de novo.

If officers have reasonable articulable suspicion that an individual is committing or has committed a crime, they are permitted to take actions that would be impermissible in the absence of reasonable suspicion. Boiled down to its essential premise, that was the Supreme Court's holding in Terry v. Ohio, 392 U.S. 1 (1968). The majority relies on this basic premise to distinguish the acts of the officers in Stone with those of the officers here. However, the majority's conclusion ignores the fact that Winningham gave consent to the investigating officers to look in the back of his van and "to run a dog" on the vehicle. Record II at 12. The range of acceptable police activity is arguably broader when consent has been given by the suspect than when the police merely have reasonable articulable suspicion that a suspect is violating the law, as was the case in Stone. The majority's decision to ignore the fact that Winningham gave his consent and to focus on the fact that the agents did not have a reasonable articulable suspicion

-5-

that Winningham was engaged in illegal activity when the dog was used is especially troubling here because the police had a reasonable articulable suspicion that Winningham was transporting illegal aliens *and* narcotics when his vehicle was initially stopped.

I also disagree with the basic foundation of the majority's opinion--that Winningham's consent was involuntary. The majority states the district court made an "oral finding [of fact] 'that there was no voluntary consent for the dog to enter the cabin of the van,'" and then reviews this finding for clear error. Majority Op. at 7. I read the court's oral statement and written findings differently. In its written findings, the court clearly stated it was suppressing the marijuana because the officers exceeded the scope of Winningham's consent, not because his consent was involuntary. Specifically, the court stated the circumstances surrounding Winningham's detention and questioning "raise[] a question as to whether Defendant . . . felt compelled to permit the dog 'on the Van, [but] this Court did not grant the motion on this basis." Record I, Doc. 46 at 2 n.1 (citation omitted).

Since the district court did not find Winningham's consent was involuntary, this court is not required to accept this fact and review for clear error. Instead, the court implicitly found consent was voluntary. This finding should be accepted by this court absent clear error. See United States v. Pena, 920 F.2d 1509, 1514

-6-

(10th Cir. 1990). I would conclude the district court's implicit conclusion that Winningham's consent was voluntary is not clearly erroneous. Instead, I believe the government established his consent was obtained without "duress or coercion, express or implied." United States v. McKneely, 6 F.3d 1447, 1453 (10th Cir. 1993).

I would conclude Winningham voluntarily consented to a limited search of his van and that the instinctive actions of the dog during that limited search did not violate the Fourth Amendment under Stone. Accordingly, I would reverse the district court's order suppressing the marijuana.