Docket No. 97439.

# IN THE
# SUPREME COURT
# OF
# THE STATE OF ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v.
JOHN A. DRIGGERS, Appellant.

*Opinion filed July 5, 2006.*

CHIEF JUSTICE THOMAS delivered the judgment of the court, with opinion.

Justices Fitzgerald and Garman concurred in the judgment and opinion.

Justice Freeman specially concurred, with opinion, joined by Justices McMorrow and Kilbride.

Justice Karmeier took no part in the decision.

## OPINION

Defendant, John A. Driggers, was charged by information with possession of drug paraphernalia (720 ILCS 600/3.5 (West 2000)) and unlawful possession of more than 2.5 but less than 10 grams of cannabis (720 ILCS 550/4(b) (West 2000)). The charges against defendant arose from a traffic stop where a drug-sniffing dog alerted to defendant's automobile. Defendant filed a motion to suppress, claiming that the search and seizure were conducted illegally because the officer had no reasonable suspicion to justify the canine sniff and defendant did not consent to the search of his vehicle or his

person. Following a hearing, the circuit court of Champaign County denied defendant's motion to suppress.

Defendant thereafter agreed to a stipulated bench trial. The trial court found defendant not guilty on the charge of unlawful possession of cannabis, but found defendant guilty of possession of drug paraphernalia. The trial court ordered defendant to pay a $750 fine and costs, and sentenced defendant to 180 days' incarceration. The appellate court affirmed defendant's conviction and sentence. No. 4–01–1118 (unpublished order under Supreme Court Rule 23). This court then allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315. For the reasons set forth, we affirm the judgment of the appellate court.

## BACKGROUND

At the hearing on defendant's motion to suppress, Officer James Sullivan testified that he is a K-9 officer with the Village of Rantoul. On July 7, 2000, Sullivan was on routine K-9 patrol, drug interdiction, when he observed a vehicle with a cracked windshield. Sullivan decided to run the plates of the vehicle and learned that the vehicle's registration had expired. Sullivan followed the vehicle into a gas station and activated his lights. Sullivan called in the traffic stop and then approached the vehicle. Sullivan asked the driver, defendant, for his driver's license and proof of insurance. Sullivan advised defendant of the reason for the stop. Defendant gave Sullivan his name and birth date, stating that although he had a driver's license, he did not have it with him. Sullivan also asked defendant and his passenger, defendant's stepson, if they had any prior contacts with the law. Defendant told Sullivan that he had been arrested in the past and that there were some drug charges, although he was not currently on probation. Defendant's stepson stated that he had been arrested once for battery. Sullivan then went back to his squad car and ran a warrant check through the police dispatcher and ran a criminal history on his laptop computer.

Sullivan learned that defendant had 13 prior arrests, including several arrests for drugs, and that defendant's

2

stepson had three prior arrests. Sullivan testified that this information heightened his interest "in the drug interdiction part of it," so he decided to walk his K-9 partner around the vehicle. Sullivan called for backup, which arrived within approximately 45 seconds. Sullivan began writing defendant a warning ticket for the cracked windshield and expired license plates while he was waiting for the backup officer to arrive, but the ticket was not completed until after defendant had been arrested. Once the backup officer arrived, Sullivan walked the dog around defendant's vehicle. The dog alerted to the driver's door seams and the front wheel well area on the driver's side. Sullivan told defendant and his stepson that the dog had alerted to their vehicle. Defendant responded that he had no idea why the dog would alert to his vehicle. Sullivan then asked defendant whether he would have a problem if Sullivan searched him and his vehicle. Defendant told Sullivan to "go ahead" and search. Sullivan searched defendant first, then searched the vehicle. When Sullivan searched defendant, he found a gold "one-hitter" pipe in defendant's left front pants pocket, with what appeared to be cannabis residue on it, and a small film canister containing what appeared to be cannabis. Sullivan showed the items to the backup officer, then advised defendant that he was under arrest and placed him in handcuffs. Sullivan testified that the entire stop took less than five minutes.

Defendant testified at the hearing on his motion to suppress that his impression was that he did not have an option concerning the search because Sullivan was going to search anyway. On cross-examination, defendant stated that when Sullivan asked if he could search defendant and his vehicle, defendant said, "Go ahead."

The trial court denied the motion to suppress. The trial court stated that the search and seizure in this case were reasonable. The trial court noted that the dog was used before the traffic stop had been concluded, and defendant's consent to the search was lawfully given. There was no indication that defendant's will was overborne. This was not a case where an unreasonable amount of time had elapsed, and Sullivan had used reasonable judgment under all the circumstances.

Defendant waived his right to a jury trial, and the parties proceeded with a stipulated bench trial. As noted, the trial court found defendant not guilty of unlawful possession of more than 2.5 but less than 10 grams of cannabis, but found defendant guilty of possession of drug paraphernalia.

Defendant appealed the trial court's denial of his motion to suppress, arguing that Sullivan did not have a reasonable suspicion sufficient to justify a canine sniff of his car. The appellate court, with one justice dissenting, affirmed the trial court's ruling. No. 4–01–1118 (unpublished order under Supreme Court Rule 23). The appellate court held that the canine sniff of defendant's vehicle was permissible under the circumstances of this case and that the canine sniff did not impermissibly prolong the detention or change the fundamental nature of the stop. The appellate court also found that defendant voluntarily consented to the search of his person.

Justice Appleton, in dissent, stated that the trial court should have granted defendant's motion to suppress because the seizure of defendant was unreasonable and in violation of the fourth amendment. No. 4–01–1118 (Appleton, J., dissenting). The dissent noted that the canine sniff was unrelated to the initial purpose of the stop, and there was no reasonable, articulable suspicion to justify the canine sniff. Citing this court's decision in *People v. Cox*, 202 Ill. 2d 462 (2002), the dissent stated that a police officer must have reasonable suspicion to justify a canine sniff of a vehicle stopped for a traffic violation. The dissent disagreed with the majority's assertion that the existence of a prior criminal conviction for drugs was sufficient to establish the reasonable suspicion necessary to expand the scope of the interaction between defendant and Sullivan.

This court allowed defendant's petition for leave to appeal. 177 Ill. 2d R. 315.

## ANALYSIS

Where a motion to suppress involves credibility assessments or factual determinations, this court will reverse a trial court's ruling only if it is manifestly erroneous. *People v.*

*Love*, 199 Ill. 2d 269, 274 (2002). The trial court's ultimate ruling granting or denying a motion to suppress is reviewed *de novo. Love*, 199 Ill. 2d at 274. Because this appeal concerns the trial court's ultimate ruling denying defendant's motion to suppress, our review is *de novo.*

At the outset, we note that defendant confines his argument on appeal to the fourth amendment to the United States Constitution (U.S. Const., amend. IV). Defendant does not argue that the search and seizure provision of article I, section 6, of the Illinois Constitution (Ill. Const. 1970, art. I, §6) provides broader protection than the fourth amendment. Defendant also does not argue that the search and seizure provision of the Illinois Constitution should not be interpreted and applied in lockstep with the United States Supreme Court's interpretation and application of the search and seizure clause of the fourth amendment. Consequently, we confine our analysis to defendant's fourth amendment claim.

Before this court, defendant argues that because Officer Sullivan lacked reasonable suspicion to initiate the canine sniff of defendant's vehicle, the evidence seized as a result of the canine's alert must be suppressed. Defendant claims that the only basis for conducting the canine sniff was defendant's criminal history, as there were no suspicious activities or odors that would justify the search. Defendant contends that under the fourth amendment, the determination of whether a search is reasonable involves a two-step analysis: (1) whether the officer's action was justified at its inception; and (2) whether the search was reasonably related in scope to the circumstances which justified the interference in the first place. Defendant concedes that Sullivan's initial actions in this case were justified, but argues that prior arrests alone, without contemporaneous, corroborating behavior, do not create a reasonable suspicion sufficient to enlarge the scope of the original detention to include a canine sniff of a vehicle during a routine traffic stop.

In support of his argument on appeal, defendant argues that this case is analogous to *People v. Caballes*, 207 Ill. 2d 504 (2003), where this court held that the trial court should have granted defendant's motion to suppress evidence

5

obtained after a police dog alerted to the defendant's vehicle during a routine traffic stop. Defendant is correct that the facts of this case are analogous to the facts set forth in *Caballes*. In that case, the defendant was stopped for speeding by Illinois State Trooper Gillette. *Caballes*, 207 Ill. 2d at 506. When Gillette radioed the police dispatcher to report the stop, Illinois State Trooper Graham overheard the transmission and decided to head to the scene with his narcotics-detection dog. *Caballes*, 207 Ill. 2d at 506. While Gillette was writing out a warning ticket for defendant, Graham walked his dog around respondent's car. The dog alerted to the trunk of defendant's car. Based upon the alert, the officers searched the trunk and found marijuana. The officers then arrested defendant. *Caballes*, 207 Ill. 2d at 507. The entire incident took less than 10 minutes.

This court initially held that the trial court should have granted defendant's motion to suppress because the State had not offered sufficient justification for implementing the canine sniff. *Caballes*, 207 Ill. 2d at 509. The officers had not detected the odor of marijuana in the car, nor had they observed any other evidence suggesting the presence of illegal drugs. *Caballes*, 207 Ill. 2d at 509. This court stated that "the police impermissibly broadened the scope of the traffic stop in this case into a drug investigation because there were no specific and articulable facts to support the use of a canine sniff." *Caballes*, 207 Ill. 2d at 509.

The United States Supreme Court, however, vacated this court's decision in *Caballes*. See *Illinois v. Caballes*, 543 U.S. 405, 410, 160 L. Ed. 2d 842, 848, 125 S. Ct. 834, 838 (2005). The Supreme Court noted that this court had held that the use of the dog converted the encounter between the defendant and the officer from a lawful traffic stop into a drug investigation, and that this shift in purpose was unlawful because it was not supported by any reasonable suspicion that the defendant possessed narcotics. *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. The Supreme Court disagreed, stating that, "conducting a dog sniff would not change the character of a traffic stop that is lawful at its inception and otherwise executed in a reasonable manner, unless the dog

6

sniff itself infringed respondent's constitutionally protected interest in privacy." *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837. If official conduct does not " 'compromise any legitimate interest in privacy,' " it is not a search subject to the fourth amendment. *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837, quoting *United States v. Jacobsen*, 466 U.S. 109, 123, 80 L. Ed. 2d 85, 100, 104 S. Ct. 1652, 1661 (1984). Because any interest in possessing contraband cannot be deemed legitimate, governmental conduct that only reveals the possession of contraband does not compromise a legitimate privacy interest. *Caballes*, 543 U.S. at 408, 160 L. Ed. 2d at 847, 125 S. Ct. at 837.

The Supreme Court therefore held that "the use of a well-trained narcotics-detection dog–one that 'does not expose noncontraband items that otherwise would remain hidden from public view,' [citation]–during a lawful traffic stop, generally does not implicate legitimate privacy interests." *Caballes*, 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S. Ct. at 838. The Court noted that the dog sniff at issue was performed on the exterior of the respondent's car while the respondent was lawfully seized for a traffic violation. *Caballes*, 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S. Ct. at 838. Therefore, any intrusion of the respondent's privacy expectations did not rise to the level of a constitutionally cognizable infringement. *Caballes*, 543 U.S. at 409, 160 L. Ed. 2d at 847, 125 S. Ct. at 838. The Court concluded:

> "A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment." *Caballes*, 543 U.S. at 410, 160 L. Ed. 2d at 848, 125 S. Ct. at 838.

In this case, as in *Caballes*, there is no dispute that the duration of the stop, which was less than five minutes, was entirely justified by the traffic offense and the ordinary inquiries incident to such a stop. The canine sniff in this case was performed on the exterior of defendant's car while defendant was lawfully seized for a traffic violation. Like the canine sniff at

7

issue in *Caballes*, the canine sniff in this case was conducted during a concededly lawful traffic stop and revealed no information other than the location of materials that defendant had no right to possess. The canine sniff, therefore, did not violate the fourth amendment. For that reason, the trial court properly denied defendant's motion to suppress.

For the foregoing reasons, the judgment of the appellate court, affirming the trial court's order denying defendant's motion to suppress, is affirmed.

*Affirmed.*

JUSTICE KARMEIER took no part in the consideration or decision of this case.

JUSTICE FREEMAN, specially concurring:

Although defendant, in his brief, includes a citation to the search and seizure provisions of the Illinois Constitution, he does not argue in any way that this provision affords him more protection than its federal constitutional counterpart, nor does he maintain that the state provision should be interpreted differently from the federal provision. Had he done so, those arguments would have been analyzed under this court's recent decision in *People v. Caballes*, No. 91547 (May 18, 2006). Because defendant did not raise these state issues, this appeal raises solely a question of federal constitutional law, the resolution of which is controlled by the United States Supreme Court's decision in *Illinois v. Caballes*, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834 (2005). For that reason alone, I concur in the judgment of the court.

JUSTICES McMORROW and KILBRIDE join in this special concurrence.

8