Filed 9/4/08          NO. 4-07-0311

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|     Plaintiff-Appellant, | ) | Circuit Court of |
|     v. | ) | Adams County |
| CHERYL L. BARTELT, | ) | No. 06CF442 |
|     Defendant-Appellee. | ) | |
| | ) | Honorable |
| | ) | Scott H. Walden, |
| | ) | Judge Presiding. |

_____

JUSTICE KNECHT delivered the opinion of the court:

In July 2006, the State charged defendant, Cheryl L. Bartelt, with unlawful possession of methamphetamine (720 ILCS 646/60(b)(1) (West 2006)). In September 2006, defendant filed a motion to suppress evidence obtained during a traffic stop. In March 2007, the trial court granted defendant's motion. The State filed this interlocutory appeal pursuant to Supreme Court Rule 604(a)(1) (210 Ill. 2d R. 604(a)(1)). On appeal, the State argues the trial court erred by granting defendant's motion to suppress the evidence. We reverse.

## I. BACKGROUND

At the December 2006 hearing on the defendant's motion to suppress, Officer Mike Tyler testified he was employed with the Quincy police department for seven years. He also noted he was formally trained in proper procedures for search and seizure.

On July 29, 2006, Tyler observed a pickup truck parked

on the sidewalk.  He recognized the truck as belonging to defendant, whom he had heard used methamphetamines.  He watched the truck for 1 1/2 hours from a one-block distance.  At approximately 8:15 p.m., defendant and a man came out of an apartment building and put garbage bags in the bed of the truck.  Defendant reentered the apartment, returned to the truck, got into the driver's seat, and pulled off the sidewalk onto the street.  Tyler followed her vehicle a short distance to a gas station.  As defendant pulled up to the gas station, Tyler turned on the lights of his police car.

Tyler approached the truck and told defendant her truck was sitting on the sidewalk for 1 1/2 hours, in violation of the Illinois Vehicle Code (625 ILCS 5/11-1303(a)(1)(b) (West 2006)).  Tyler explained defendant's violation, got her insurance and driver's license information, and returned to his vehicle to run the driver's license through the LEADS system.

Officer Darin Kent arrived on the scene while Tyler was running the driver's license, and he asked Tyler to set up the truck for a canine sniff.  Tyler ordered defendant to roll up the windows and turn the vents "on high" blowing out air.  Tyler did not observe any illegal items in plain view.  Kent then ran Max, his canine, around the truck.  Max alerted on both doors.  Tyler ordered defendant out of the vehicle and asked whether anything illegal was in the vehicle.  Tyler sent defendant to the rear of

the truck to talk to Kent.

Tyler testified Kent briefly searched both defendant and passenger. Tyler then watched defendant and the passenger while Kent searched the cab of the truck. Kent did not ask permission to search the vehicle because the dog had alerted to the vehicle. Kent found a pen casing in a wallet, a digital scale, and a burnt piece of tinfoil. More burnt tinfoil was found inside the garbage bags in the bed of the truck. Defendant was arrested. Officer Darla Pullins arrived and searched defendant and then drove her to police headquarters, where defendant was read her rights. Defendant asked for an attorney, and Tyler did not question her.

Tyler stated when he first noticed the truck parked on the sidewalk he did not know who was responsible for the vehicle violation. After he looked up the license plate, Tyler became interested in conducting a traffic stop and drug sniff and alerted Kent he was waiting for the driver. Tyler estimated Kent arrived within three minutes of the traffic stop.

Tyler testified when he ordered defendant to set up the car, he directed her to roll up all the windows and turn the vents on high blowing air. Tyler said when he goes through the set up he directs the driver put the car on auxiliary power and then says, "Can you go ahead [and] close all your windows and turn your blowers on high."

Tyler also testified the set-up procedure is one taught at the canine academy and Kent prefers officers do so to prepare for a dog sniff. This technique forces air out of a vehicle.

Officer Darin Kent testified he was employed as a Quincy police officer for 10 1/2 years and had been a canine handler for the street-crimes unit since 2002. His canine's name was Max, and Max was a full-service police canine trained in drug detection, tracking, article searches, and area searches. Kent initially took a 10-week training course, and he and Max recertified with an independent evaluator every six months. Kent had also been trained in advance techniques for canine SWAT and later became an instructor for new canine handlers through the Illinois State Police.

Immediately before a canine sniff, Kent stated he directed the driver to turn the engine off, turn the key to auxiliary, turn the blower on high, roll up the windows, and close the doors to force drug odors through the seams of the vehicles. Canines are trained to specifically sniff a vehicle's seams. Kent tells drivers they need to comply with the set up, but he does not threaten them into complying.

During the traffic stop in this case, Kent conducted the exterior sniff of the vehicle. Max alerted on both the driver and passenger sides. When Max alerted, he squared his body to the odor, breathed rapidly, put his paw out, and barked.

Kent returned Max to the squad car and searched the vehicle. He found a pen casing with a burnt end and a powder substance on the inside, several burnt strips of tinfoil, and a digital scale.

Kent also said he was taught the set-up technique by the Illinois State Police and he in turn taught officers the same. Drivers are not given a warning before officers request the vehicle set up. Kent testified to avoid issues regarding a search before probable cause he would not reach his own hand into a vehicle to turn on the auxiliary power or blower.

The trial court then questioned Kent about how he would get consent to search a vehicle. Kent testified officers typically "finish a traffic stop, completely release them from the traffic stop, *** [and] then ask if they have time to speak with us[,] at which time we will then ask for consent to search the vehicle." When they set up a vehicle for a dog sniff, the officer says, "[Y]ou need to roll your windows up and turn your vents on high." Kent does not present it as an option to the occupants of the vehicle.

Upon conclusion of arguments of counsel, the trial court granted the motion to suppress evidence, reasoning as follows:

> "The officers had no probable cause to
> enter the vehicle before Max alerted. By
> requiring the defendant, without her consent,

- 5 -

to close the doors and windows and turn the blower on high, the officers in effect moved and manipulated the air within the vehicle that would not otherwise have been subject to their plain view or smell. Max could not lawfully be where the officers could not lawfully be. The officers could not lawfully be in the vehicle, and therefore Max could not lawfully be in the vehicle. In order for the 'plain view' or 'plain smell' doctrines to be applicable, the officer, and in this case Max, had to be in a place where they could lawfully be before they could lawfully view or smell. The court recognizes that Max was still outside the defendant's truck when he alerted, but the analogy from [United States v.] Hutchinson [,471 F. Supp. 2d 497, (M.D. Pa. 2007)], seems applicable and logical. In effect, Max was placed inside the vehicle by the officers. Applying Hutchinson logic, the court finds that the directing of the defendant to close the truck's windows and door and to turn on the blower on high turned the dog sniff into an unreasonable

search under the fourth amendment."

## II. ANALYSIS

This court will reverse a trial court's ruling on a motion to suppress where it involves credibility assessments or factual determinations only if it is against the manifest weight of the evidence. People v. Driggers, 222 Ill. 2d 65, 70, 853 N.E.2d 414, 417 (2006). A reviewing court examines de novo the ultimate ruling granting or denying the motion to suppress. Driggers, 222 Ill. 2d at 70, 853 N.E.2d at 417.

At the outset, we note the arguments on appeal are limited to the set-up technique employed by the police prior to the dog sniff and no other portion of the stop is at issue. The question is whether the police order to defendant to roll up her windows and turn the blower to high intruded upon a legitimate privacy interest and constituted a search under the fourth amendment.

The State argues the trial court's decision should be reversed because Tyler's orders to set up the vehicle did not change the nature of the sniff to an unlawful search because (1) Max remained outside the vehicle and (2) defendant had no legitimate expectation of privacy in the potentially incriminating odors emanating from her lawfully stopped vehicle.

"A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." United

States v. Jacobsen, 466 U.S. 109, 113, 80 L. Ed. 2d 85, 94, 104 S. Ct. 1652, 1656 (1984). A field test that has a remote possibility of revealing a noncriminal fact is highly unlikely to "actually compromise any legitimate interest in privacy" and cannot be characterized as a search subject to the fourth amendment. Jacobsen, 466 U.S. at 124, 80 L. Ed. 2d at 101, 104 S. Ct. at 1662 (holding a field test to determine whether a white powder substance was cocaine was not a search). More recently, the Court found a dog sniff does not compromise defendant's legitimate interest in privacy because no one has a legitimate interest in possessing contraband, and the canine drug-sniff, properly performed, was likely to reveal only the presence of contraband. Illinois v. Caballes, 543 U.S. 405, 408-09, 160 L. Ed. 2d 842, 847, 125 S. Ct. 834, 837-38 (2005).

The State argues the set-up technique was more properly compared to government agents prepping luggage for a dog sniff than to opening a vehicle or a container in its interior. Federal precedent suggests government agents do not violate the fourth amendment when they prepare a defendant's luggage to facilitate a canine sniff for drugs. See United States v. Viera, 644 F.2d 509, 510-11 (5th Cir. 1981) (holding that where government agents prepare bags by pressing lightly with the hands and slowly circulating the air, this does not constitute a search); see also United States v. Lovell, 849 F.2d 910, 915 (5th Cir.

1988) (noting where Drug Enforcement Administration (DEA) agents touched and compressed the sides of defendant's bags to force air out of them to facilitate a canine sniff, this did not amount to a search).

The State also argues the decisions relied on by the trial court to grant the motion to suppress do not by analogy make the "set up" technique a search. See Arizona v. Hicks, 480 U.S. 321, 324-25, 94 L. Ed. 2d 347, 353-54, 107 S. Ct. 1149, 1152 (1987) (noting the plain-view exception does not allow the police to seize an item and then further investigate the item's parts that are not in plain view). Guided by Hicks, the court in Hutchinson, 471 F. Supp. 2d at 510, stated the "'plain smell'" doctrine should have no application where an officer "opens a vehicle or other container to assist a canine in detecting the presence of contraband, and where the canine has not already positively alerted or indicated that it has detected the scent of contraband within the container." In contrast, "the plain-sniff rule would apply because the dog was not aided in its sniff by an intervening officer and the dog detected the odor in an area in which it was lawfully present." Hutchinson, 471 F. Supp. 2d at 510; see also United States v. Winningham, 140 F.3d 1328, 1329 (10th Cir. 1998) (suppressing evidence where border patrol agents opened the van's sliding door to allow the dog's entry into the vehicle).

The State further contends the driver of a car on a public street has no legitimate expectation of privacy in the ambient air from his vehicle, if lawfully detained. Specifically, the order to turn on the blower did not intrude upon a legitimate privacy interest and was not the equivalent of a physical entry into the vehicle. In this case, Max's nose did not intrude into the constitutionally protected area of the defendant's truck. Max's sniff was limited to the exterior of the truck, where he had a right to be, and the incriminating odors from the methamphetamine were expelled outside into the public air. The canine sniff was focused to reveal only the presence or absence of contraband and thus was not a fourth-amendment search.

Defendant argues the trial court made the correct decision in granting the motion to suppress. The court looked at the conduct of the police after the stop to determine its validity. The court distinguished this case from Caballes, 543 U.S. 405, 160 L. Ed. 2d 842, 125 S. Ct. 834, and Driggers, 222 Ill. 2d 65, 853 N.E.2d 414, because the officer ordered the car's blower turned on. The order turned the lawful dog sniff into an unreasonable search under the fourth amendment.

In Hutchinson, the court noted it was not clear the decisions in City of Indianapolis v. Edmond, 531 U.S. 32, 148 L. Ed. 2d 333, 121 S. Ct. 447 (2000), and Caballes, 543 U.S. 405,

- 10 -

160 L. Ed. 2d 842, 125 S. Ct. 834, "would support a dog sniff that moves from the exterior of an automobile to the interior of the car." Hutchinson, 471 F. Supp. 2d at 505. In United States v. Stone, 866 F.2d 359, 364 (10th Cir. 1989), the Tenth Circuit opined people have a reasonable expectation of privacy in the interiors of their automobiles, but it upheld an interior sniff as lawful where a canine jumped though an open hatchback and alerted on a duffle bag. In Stone, the police never asked the defendant to open the hatchback and did not encourage the canine to jump into the car. Stone, 866 F.2d at 364. Whereas in Winningham, evidence was suppressed where (1) the officers lacked reasonable suspicion of narcotics in a van, (2) the officers opened the van's door, and (3) the canine officer unleashed the dog as it approached the open door. Winningham, 140 F.3d at 1331.

The trial court here relied on the Hutchinson logic. The court found a greater expectation of privacy in the interior of the vehicle than on the exterior. Further, the dog sniff was tainted by the set-up orders of the police because it invaded the interior of the car via police action and the orders were made before reasonable suspicion or probable cause existed.

Defendant points to People v. Love, 199 Ill. 2d 269, 769 N.E.2d 10 (2002), to support her fourth-amendment argument. In Love, officers made a stop in accordance with Terry v. Ohio, 392

U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968), after observing "what appeared to be a drug transaction," in which the defendant exchanged money for something pulled from her mouth. <u>Love</u>, 199 Ill. 2d at 277, 769 N.E.2d at 16. Our Illinois Supreme Court found an order to defendant to spit out what was in her mouth was lawful as a search incident to arrest because probable cause existed before the order was given. <u>Love</u>, 199 Ill. 2d at 280, 769 N.E.2d at 17-18.

Defendant argues the police order in this case was designed to magnify the odors from the interior of the car for the canine's plain sniff and is analogous to police being allowed to order defendant sitting in her vehicle to open a purse or other container within the car to increase plain view of the interior. Defendant contends the sequence required to satisfy the fourth amendment is first a drug-dog alert and then permissible requests or orders, rather than first impermissible requests or orders followed by a canine inspection.

A recent decision by the Supreme Court illuminates reasonable search and seizure under the fourth amendment. In <u>Virginia v. Moore</u>, 553 U.S. ___, 170 L. Ed. 2d 559, 128 S. Ct. 1598 (2008), the Court stated:

"When history has not provided a conclu-
sive answer, we have analyzed a search or
seizure in light of traditional standards of

reasonableness 'by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed [to] the promotion of legitimate governmental interests.'" Moore, 553 U.S. at ___, 170 L. Ed 2d at 567, 128 S. Ct. at 1604, quoting Wyoming v. Houghton, 526 U.S. 295, 300, 143 L. Ed. 2d 408, 414, 119 S. Ct. 1297, 1300 (1999).

The Court later noted, "[i]n determining what is reasonable under the [f]ourth [a]mendment, we have given great weight to the 'essential interest in readily administrable rules.'" Moore, 553 U.S. at ___, 170 L. Ed. 2d at 569, 128 S. Ct. at 1606, quoting Atwater v. City of Lago Vista, 532 U.S. 318, 347, 149 L. Ed. 2d 549, 573, 121 S. Ct. 1536, 1554 (2001).

The Idaho Supreme Court considered what is reasonable under the fourth amendment in Idaho v. Irwin, 143 Idaho 102, 137 P.3d 1024 (2006). In Irwin, the defendant argued police officers subjected her to an unreasonable search when the officers opened the door of the defendant's automobile before directing the defendant to exit. Irwin, 143 Idaho at 104, 137 P.3d at 1026. That court reviewed fourth amendment jurisprudence in determining whether the search was consistent with constitutional standards. In that case, the court noted there was no question the officers

possessed reasonable suspicion to detain the defendant for traffic violations.  Given that, the officers were entitled to order the defendant out of the vehicle.  Irwin, 143 Idaho at 105, 137 P.3d at 1027.  The court found because officers have clear authority to order people out of vehicles during a roadside stop, it is constitutionally irrelevant whether the officer or the occupant opens the car door.  Irwin, 143 Idaho at 106, 137 P.3d at 1028.  The Idaho Supreme Court noted under Pennsylvania v. Mimms, 434 U.S. 106, 111, 54 L. Ed. 2d 331, 337, 98 S. Ct. 330, 333 (1977),  that a mere inconvenience cannot prevail when balanced against legitimate concerns about officer safety.

At oral argument, defense counsel conceded that (1) the officer could properly order the driver to get out of the truck essentially whenever the officer wished and (2) had the officer waited until the dog was present at the truck's front door, through which the driver would get out of the vehicle, before ordering the driver out (thereby bringing the ambient air with her), then she would have no basis to complain about the police conduct.  In light of traditional standards of reasonableness, the degree to which this conduct intruded on defendant's privacy borders on de minimis.  The driver is being asked to expose a little more ambient air than would have otherwise been exposed. The conduct may be needed for the promotion of legitimate govern-mental interests, i.e., detecting the presence of illegal drugs

- 14 -

in the ambient air of the vehicle's interior by a trained dog.

We find the set-up technique to be a practical tool of police work that does not interfere with the reasonable expectation of privacy in the interior of defendant's car.  Under Caballes, "[a] dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has [the] right to possess does not violate the [f]ourth [a]mendment."  Caballes, 543 U.S. at 410, 160 L. Ed. 2d at 848, 125 S. Ct. at 838.  The amplification of odors emanating from noncontraband within the car is otherwise innocuous.

The set-up procedure is quick and nonintrusive; thus, it does not impermissibly lengthen the duration of the stop.  It also ensures the canine remains outside the vehicle during the sniff, as both the doors and windows are closed.  This is a practical technique that balances a defendant's reasonable expectation of privacy with the opportunity to allow law enforcement to ferret out crime.  No fourth-amendment violation occurs when an officer lawfully investigating a traffic violation orders the occupant to roll up the windows and turn on the blowers to facilitate a dog sniff.

### III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment suppressing evidence and remand for further proceedings.

- 15 -

Reversed.

STEIGMANN, J., concurs.

COOK, J., dissents.


JUSTICE COOK, dissenting:

I respectfully dissent and would affirm the decision of the circuit court.

A police officer who has stopped a vehicle for a traffic violation does not have unbridled authority to order and conduct chemical tests. The officer may not search the vehicle, absent probable cause or consent. The officer may not force the driver, and certainly not the passengers, to submit to a Breathalyzer test, although the driver's failure to do so will be admissible in a DUI prosecution. People v. Jones, 214 Ill. 2d 187, 201, 824 N.E.2d 239, 247 (2005). However, the officer is not required to ignore things in plain view. "Plain view" includes items that would be within the "plain smell" of a dog at the exterior of a vehicle. In the present case, the officer impermissibly went beyond what was in plain view and ordered the occupants of the vehicle to engage in testing.

The circuit court gave a lot of thought to this case and set out its reasoning in a carefully written order:

"Having determined that the stop was proper, the issue really boils down to

- 16 -

whether or not the defendant's [f]ourth [a]mendment rights were violated by the officers instructing her to close the truck's windows and doors and turn the blowers on high. This seems to be a case of first impression. There was no basis for the officers to search the truck before Max alerted on the truck. There was no consent to search prior to Max's alert, and in fact, no consent to search the truck was ever requested by the officers. There was no probable cause to search the truck before Max alerted.

It is important to note that the length of the stop was not unreasonably extended by virtue of involving the canine officer in this stop. Officer Kent arrived with Max within approximately three minutes of Officer Tyler stopping the car, and Officer Tyler was still writing the parking ticket when Max alerted on the truck. (See <u>People v. Brownlee</u>, 186 Ill. 2d 501[, 713 N.E.2d 556] (1999), <u>People v. Gonzalez</u>, 204 Ill. 2d 220[, 789 N.E.2d 260] (2003), and <u>People v. Bunch</u>, 207 Ill. 2d 7[, 796 N.E.2d 1024] (2003).)

- 17 -

Illinois v. Caballes, 543 U.S. 405[, 160 L. Ed. 2d 842, 125 S. Ct. 834] (2005), holds that a dog sniff for drugs does not change the character of an already proper stop and that such a dog sniff does not infringe on a constitutionally protected right of privacy. Therefore, it is not a search subject to the [f]ourth [a]mendment. A drug dog's sniff reveals only the presence of contraband, and people have no legitimate interest in possessing contraband. Thus, no legitimate privacy interest is compromised by a drug dog's sniff. [Caballes, 543 U.S. at 408[, 160 L. Ed. 2d at 897, 125 S. Ct. at 837-38].

It seems important to note that in Caballes and People v. Driggers, 222 Ill. 2d 65[, 853 N.E.2d 414] (2006), another drug dog case in which the sniff was not found to implicate the [f]ourth [a]mendment, the sniffs occurred on the exterior of the vehicle. In the case at hand, Max alerted on the defendant's truck from the outside of the truck, but he had some help. The drug-tainted air

from the interior was being forced out of the truck by the turned- up blowers.  The blowers were turned up by the defendant, but only upon the demand of the officers.  The State would argue that since the defendant does not have a constitutionally protected interest in contraband or its odor, the distinction makes no substantive difference. The State argues that since the police had the right to direct the defendant to get out of her truck, then the air inside is exposed by the opening of the door.  If Max had alerted on the truck from the exterior of the truck through the open door, then Caballes and Driggers would clearly apply. However, that is not all that happened in this case.

While, again, there does not appear to be a case exactly on point, the court finds the case of [United States] v. Hutchinson, [471] F. Supp. 2d [497] (M.D. Pa. [2007]), to be helpful in addressing the issue.  Hutchinson contains a rather thorough discussion of a line of cases that holds that when a drug

dog enters a vehicle through an already opened door or window of its own accord, driven by its natural instincts, that the dog's entry into the vehicle does invalidate an otherwise lawful sniff.  (Among the cases cited are two supplied in this case by the defense: [United States] v. Stone, 866 F. 2d 359 ([10th Cir.] 1989), and [United States] v. Winningham, 140 F.3d 1328 ([10th Cir.] 1998).)  In Winningham, the drug dog alerted after entering the van through a door opened by the defendant at the direction of the officer making a lawful stop.  The court held that the defendant had not given consent for the dog to enter the van, and therefore the re-sulting discovery of drugs was in violation of the [f]ourth [a]mendment.  The court in Hutchinson used the 'plain view' and 'plain smell' doctrines in its analysis of the impact of a drug dog's entry into a vehicle to deter-mine the legality of the seizure.  '[T]he majority of federal courts *** have concluded that canine sniffs of the interior of a vehicle or other container are lawful, but

suggest that such interior sniffs may become constitutionally infirm in the event that the interior sniff is accomplished or facilitated by the officer-handler.' [Hutchinson, 417 F. Supp. 2d] at [508]. 'Notably, the Supreme Court has held that where an officer who is lawfully present at [a] particular location moves or manipulates an object seen in plain view, and where the officer has no probable cause to search the item, the act of moving or manipulating the object constitutes an unreasonable search under the [f]ourth [a]mendment that is not subject to the plain[-]view doctrine.' [Hutchinson, 471 F. Supp. 2d] at [509]. The court in Hutchinson goes on to hold that 'Where an officer opens a vehicle or other container to assist a canine in detecting the presence of contraband, and where the canine has not already positively alerted or indicated that it has detected the scent of contraband within the container, it seems logical to conclude that the "plain smell" doctrine should have no application, since the positive sniff that results was

presumably aided or achieved impermissibly by the officer's manipulation of the container.' [Hutchinson, 471 F. Supp. 2d at 510]. Courts in at least two other states have ruled, consistent with this reasoning, that when an officer encourages a drug dog to enter a vehicle when it had not first alerted on the vehicle's exterior, that the dog's actions constituted an unlawful search. (See State v. Warsaw, 125 N.M. 8, [12,] 956 P.2d 139[, 143] (1997), and State v. Freel, 29 Kan. App. 2d 852, [860,] 32 P.3d 1219 [, 1225] (2001).)

While again not directly on point, the Hutchinson logic seems applicable to the case at hand. The officers had no probable cause to enter the vehicle before Max alerted. By requiring the defendant, without her consent, to close the doors and windows and turn the blower on high, the officers in effect moved and manipulated the air within the vehicle that would not otherwise have been subject to their plain view or smell. Max could not lawfully be where the officers could not lawfully be. The officers could not law-

fully be in the vehicle, and therefore Max could not lawfully be in the vehicle.  In order for the 'plain view' or 'plain smell' doctrines to be applicable, the officer, and in this case Max, had to be in a place where they could lawfully be before they could lawfully view or smell.  The court recognizes that Max was still outside the defendant's truck when he alerted, but the analogy from Hutchinson seems applicable and logical.  In effect, Max was placed inside the vehicle by the officers.  Applying the Hutchinson logic, the court finds that the directing of the defendant to close the truck's windows and doors and to turn the blower on high turned the dog sniff into an unreasonable search under the [f]ourth [a]mendment.  Therefore, the court grants the defendant's motion to suppress evidence, and all evidence seized from the defendant's truck is hereby suppressed."

We should affirm.